UNITED STATES of America,
Plaintiff-Appellee,

v.

Eddie HOWELL and Wayne E. Kittle,
Defendants-Appellants.

No. 80–7660.

United States Court of Appeals,
Fifth Circuit.*

Unit B

Dec. 18, 1981.

Rehearing Denied Feb. 24, 1982.

Certiorari Denied March 8, 1982.
See 102 S.Ct. 1641.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Roland L. Enloe, Jr., Fort Oglethorpe, Ga., (court-appointed), for Howell.

Jack T. Edmund, Bartow, Fla., for Kittle.

Charles Saphos, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before FRANK M. JOHNSON, Jr., HENDERSON and THOMAS A. CLARK, Circuit Judges:

PER CURIAM:

The appellants, Eddie Howell and Wayne E. Kittle, were convicted in a jury trial of conspiracy to steal, transport and dispose of a motor vehicle and to transport and dispose of goods valued in excess of $5,000.00, 18 U.S.C. § 371; interstate transportation and sale of a stolen motor vehicle, 18 U.S.C. §§ 2, 2312 and 2313; and interstate transportation and sale of stolen goods valued in excess of $5,000.00, 18 U.S.C. §§ 2, 2314 and 2315. Both appellants contend that tape recordings of wire and oral communications admitted into evidence were obtained in violation of the federal wiretapping statute, 18 U.S.C. §§ 2510–2520. Kittle maintains further that hearsay evidence of his reputation was improperly admitted when his character had not been placed in issue, that the evidence was insufficient to support a guilty verdict, and that the evidence sustained his defense of entrapment as a matter of law. Howell claims that the hearsay evidence introduced to rebut Kittle's defense prejudiced his right to a fair trial, and compels separate trials. Finding no reversible error, we affirm.

In October 1977, Richard Allen Davey, an independent trucker, visited the Sand Mountain Farmer's Co-op in Henegar, Alabama, in the quest for work. Kittle, Davey's acquaintance from several years before, was the dispatcher for the co-op, which was owned by David Storey. Kittle told Davey that he was in a position to steal valuable truckloads of carpet anytime he wished. After procuring and hauling a load of chickens, Davey returned to his home in Jacksonville, Florida, and reported this conversation to the Federal Bureau of Investigation (FBI). The FBI had Davey telephone Kittle and tell him of a man in Chicago who was interested in stolen carpet. On December 1, 1977, Davey returned to the co-op at Kittle's invitation to discuss the load of carpet which Kittle had mentioned earlier. When he arrived, Kittle told him that government agents were present at the co-op, and that they would have to wait until things "cooled off" before Kittle could sell a load.

In early January 1978, Kittle made a telephone call to Davey in Florida, and reported that they were ready to deal and that Davey should contact Tom, the buyer from Chicago. On January 17, 1978, Davey called Kittle back, and told him that Tom was ready to purchase the load of stolen carpet. On January 19, 1978, Davey came to north Georgia and again telephoned Kittle. Kittle told him that he had "a boy named Jimmy" out looking for a load to steal. Two days later, Davey and Special Agent Tom Sobolewski met with Kittle at the co-op. Kittle directed them to rent a truck tractor and to return to their motel.[1] He said that Howell (to whom he referred as "Eddie") would locate a load of carpet and take it from the manufacturer's lot. He explained that Howell would be able to remove the carpet with an unmarked truck because he was well known in the area.

Howell and Davey drove around the area looking for a load of carpet. Because it was a weekend, they were unable to find one, and after checking several mill lots Davey suggested that they might be able to steal the carpet from the co-op lot. When they returned to the hotel room, Howell repeated this suggestion to Sobolewski, and proposed also that Davey and Sobolewski should deal directly with him and cut Kittle out of the transaction. When Sobolewski pointed out that this might anger Kittle, it was agreed that Kittle should remain privy to the transaction, but that Howell might work with Sobolewski on another deal later.

After Kittle arrived, Davey, Sobolewski, Howell, and Kittle discussed further the logistics of stealing a load of carpet. Davey observed that it would be difficult for Howell to drive a stolen load past a guard, because he might be recognized later. Sobolewski then stated that they could possi-

---

1. There is evidence that Kittle's original plan was for Jimmy to locate a trailer, which Davey would then steal. As it turned out, Jimmy faded from view and was replaced by Eddie Howell, and the defendants delivered a stolen truck tractor, trailer and load of carpet to Davey and Sobolewski in Georgia.

bly take a load of carpet from the co-op lot. Kittle assented to this idea. They discussed price. Kittle said that he would sell a tractor for $5,000.00, and a trailer loaded with carpeting for another $5,000.00. He stated that he would "go back to the yard [to] take inventory, find out who's going where and when," and then call Sobolewski and Davey. Davey and Sobolewski agreed to wait for the telephone call.

Later that evening, Howell called Sobolewski to say that he was at the co-op and that he would leave when the other employees departed the premises. Still later, Kittle called Davey to report that they could not get the truck started because of the temperature. He advised Davey and Sobolewski to return home, and that he would procure a load and send it down "that way" on Monday or Tuesday. Kittle said that he would call first. On January 25, 1978, Kittle called Davey saying that they had a load ready to deliver to the Twin-Six truck stop in Atlanta. He stated that Howell would make the delivery. Howell was to receive the payment at that time and then so inform Kittle. Davey agreed to contact Sobolewski and proceed to Atlanta. He asked Kittle to contact him and Sobolewski the next day in Atlanta.

The following day, Sobolewski telephoned Kittle, who related that the deal was definitely on and that carpet from World Carpet would be delivered after midnight. Later, Kittle told Sobolewski that delivery would be delayed. When Sobolewski insisted on a prompt conclusion of the transaction, Kittle became angry and offered to cancel the deal. Sobolewski managed to relieve the tension, and Kittle promised that the load would be delivered at about 3:00 o'clock a. m. at the Twin-Six truck stop in Atlanta, on January 28, 1978.

When Davey and Sobolewski went to the Twin-Six truck stop, they met Howell, who was driving a co-op truck and a trailer loaded with carpeting. They inspected the goods which Howell confirmed had come from World Carpet. Sobolewski then paid

Howell $5,000.00. Howell protested that he had expected $10,000.00. Howell called Kittle, and both Howell and Sobolewski discussed the problem with him. Kittle agreed to accept $5,000.00 at that time and the remaining $5,000.00 later. Sobolewski and Kittle spoke several times after January 28, 1978, and eventually agreed to meet at the Days Inn motel in Ringgold, Georgia, for the final payoff. When Kittle entered the room, Sobolewski identified himself as an FBI agent.

During the course of the FBI investigation, numerous oral and telephone conversations were recorded by means of telephone pickups and Nagra body recorders. All of these conversations were attended by either Davey or Sobolewski, or both, and were party or consensual recordings within the meaning of 18 U.S.C. § 2511(2)(c).

Early during the trial Kittle's attorney questioned Special Agent Millard, who was in charge of the investigation, with respect to the purpose of the investigation.[2] Later in the trial the government also introduced evidence on this point. Millard testified that he had information that the Sand Mountain Farmer's Co-op was the site for rebuilding stolen truck tractors for reuse in the co-op trucking business. He stated that other individuals told him that Kittle was David Storey's "right-hand man," and that this meant that he was the "middle man" for Storey.[3] Kittle objected to this evidence on the ground that reputation is not admissible as a rebuttal to the defense of entrapment, and further that "there has been an adequate explanation in the record as to why this investigation was commenced on the Mountain at that particular time." The district court admitted the testimony with the limiting instruction that the testimony "is admitted only for the purpose of explaining, if it does, conduct of other law enforcement officers or agents of other law enforcement officers or to explain, if it does, the conduct of this law enforcement officer. And, it is further admitted only as it may go, if it does, to any issue of entrapment."

2. Record Vol. I p. 166 line 19 to p. 168 line 13.

3. Record Vol. IV p. 77 line 11 to 79 line 14.

When the government proffered its evidence concerning Kittle and the co-op, Howell moved for a severance. At that time Howell had not raised his entrapment defense, and he assigned as grounds for the motion the defendants' inconsistent defenses and undue prejudice to him as a result of the rebuttal evidence. The district court denied the motion subject to subsequent reconsideration.

■ The appellants urge that a warrant was required to record the conversations between them and the informant and the government agents, notwithstanding the fact that either Davey or Sobolewski was a party to or consented to the recording of each conversation. This argument is frivolous. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. Shedan*, 651 F.2d 336, 337 (5th Cir. Unit B 1981); *United States v. Mendoza*, 574 F.2d 1373 (5th Cir. 1978), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978). The contention that consent only legitimates the interception, and not the reception into evidence of such conversations, is similarly without merit. 18 U.S.C. § 2515; *see id.* § 2511(1)(a), (2)(c).

■ The admission of Special Agent Millard's testimony respecting the reputation of Sand Mountain Farmer's Co-op as a center for the theft, refitting, and subsequent use of truck tractors and trailers was not error. Kittle first inquired as to the reason for the investigation, and he may not now complain that the answers resulted in a response from the government. *United States v. Darland*, 659 F.2d 70 (5th Cir. 1981); *see United States v. Webster*, 649 F.2d at 351. The evidence of Kittle's own character, however, falls squarely within our recent en banc decision in *United States v. Webster*, 649 F.2d 346 (5th Cir. 1981), where we held that hearsay evidence of reputation is generally inadmissible to rebut an entrapment defense.

■ *Webster* was decided on July 2, 1981, nearly a year after Kittle's conviction on July 11, 1980, but during the pendency of his appeal. We declined to reach the question whether the admission of hearsay evidence of reputation and prior criminal acts violates a defendant's Sixth Amendment right to confrontation. 649 F.2d at 350 n.9. These facts raise several difficult questions regarding whether *Webster* should be applied retrospectively or prospectively. However, the problem need not be addressed if the evidence of Kittle's reputation here amounted to harmless error.

Because of the potential for prejudice which exists where evidence of reputation or prior criminal acts is admitted, *see United States v. Webster*, 649 F.2d at 350, we have closely examined the record as a whole to determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963); *see Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In a close case, or when the tainted evidence stands alone on an issue of fact essential to a finding of guilt, we have found reversible error. *United States v. Webster*, 649 F.2d 346 (5th Cir. 1981) (en banc); *United States v. Whitaker*, 619 F.2d 1142 (5th Cir. 1980); *United States v. Cueto*, 611 F.2d 1056 (5th Cir. 1980). However, where there is overwhelming proof of guilt from clear and convincing evidence which is not reasonably subject to conflicting interpretations, and the inadmissible evidence does not establish a vital link in the government's case, we have just as decisively held admission of the latter to be harmless error. *United States v. Webb*, 633 F.2d 1140 (5th Cir. 1981) (products of illegal search); *United States v. Poitier*, 623 F.2d 1017 (5th Cir. 1980) (hearsay). Here, Kittle's intent and predisposition to commit the acts charged was established largely by recorded evidence of his own statements. Not only did he initiate the criminal venture, he also was present and active at every stage of the events leading up to his receipt of final payment for the stolen items, negotiating price and terms of the sale, and directing the delivery in Georgia. He was not a minor participant in the scheme, or one whose acts were so equivocal as to be sub-

ject to an innocent interpretation. *See United States v. Guerrero,* 650 F.2d 728 (5th Cir. Unit A 1981). In light of the other independent and conclusive evidence of his guilt, we find the admission of evidence of Kittle's reputation to be harmless error beyond a reasonable doubt.[4]

■ The district court correctly denied Howell's motion for severance which was based upon the admission of evidence relative to the reputation of Kittle and the co-op. As a general rule, especially in conspiracy cases, parties jointly indicted should be tried together. *United States v. Wilson,* 657 F.2d 755 (5th Cir. Unit A 1981); *see* Fed.R.Crim.P. 8(b). The district court may in its discretion order separate trials, however, where necessary to avoid prejudice. *Panzavecchia v. Wainwright,* 658 F.2d 337 (5th Cir. 1981); *United States v. De La Torre,* 639 F.2d 245 (5th Cir. Unit A 1981); *see* Fed.R.Crim.P. 14.[5] In such cases the defendant has the heavy burden of showing specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials. *United States v. Baldarrama,* 566 F.2d 560, 569 (5th Cir. 1978), *cert. denied,* 439 U.S. 844, 99 S.Ct. 140, 58 L.Ed.2d 145 (1978); *United States v. Nims,* 524 F.2d 123, 125 (5th Cir. 1975), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). Evidence of a co-defendant's reputation usually will not suf-

fice. *Cf. United States v. Ocanas,* 628 F.2d 353, 359 (5th Cir. 1980) (prior criminal acts), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).[6] Howell has demonstrated no prejudice requiring reversal here. As he aptly states in his brief, the evidence concerning Kittle and the co-op came in "after four days of trial in which the defendants were inextricably linked as alleged co-conspirators by the evidence." *See United States v. Wolford,* 614 F.2d 516, 518 (5th Cir. 1980). The evidence of Howell's guilt, as with Kittle, resulted mostly from his own words, and was so overwhelming that there is no reason to conclude that this evidence prevented a fair trial.[7]

■■ Kittle's challenge to the sufficiency of the evidence meets the same fate. There was ample circumstantial evidence of an agreement between Howell and Kittle, *see United States v. Marx,* 635 F.2d 436 (5th Cir. Unit B 1981), and of the commission of one or more of the alleged overt acts by one or the other of the defendants. *United States v. Caicedo-Asprilla,* 632 F.2d 1161 (5th Cir. 1980), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 201 (1981); *United States v. Kelly,* 569 F.2d 928, 936 (5th Cir. 1978), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). The government met its burden of rebutting the entrapment defense by competent evidence of Kittle's own conduct. *See United States*

---

4. This conclusion in no way weakens our holding in *Webster* that such evidence is not generally admissible. The admission of tainted evidence is always subject to a rule of harmless error, *see* Fed.R.Crim.P. 52(a), and must be evaluated on a case-by-case basis.

5. Fed.R.Crim.P. 14 provides:

> If it appears that a defendant . . . is prejudiced by a joinder . . . of defendants . . . for trial together, the court may . . . grant a severance of defendants or provide whatever other relief justice requires.

6. The claim of inconsistent defenses, raised at the trial and not preserved here, became moot when Howell asserted the defense of entrapment. It was, in any event, without merit. *United States v. Lentz,* 624 F.2d 1280 (5th Cir. 1980), *cert. denied sub nom. Hullum v. United States,* 450 U.S. 995, 101 S.Ct. 1696, 68 L.Ed.2d 194 (1981).

7. The district court did not instruct the jury that the evidence should be considered only as to Kittle. Ordinarily, a limiting instruction is necessary where the evidence bears on only one co-defendant. *United States v. Davis,* 546 F.2d 617, 620 (5th Cir. 1977); *see United States v. Bynum,* 566 F.2d 914, 920 (5th Cir. 1978), *cert. denied,* 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978). The failure to give such an instruction is not assigned as error, and may be explained by the failure of Howell's counsel to request such an instruction, or by his statement to the court before Millard testified, that "there is some evidence as to the—that would raise an entrapment defense as to Mr. Howell." The failure to give a limiting instruction does not require a new trial where such is harmless error. *See United States v. Jackson,* 588 F.2d 1046, 1056 (5th Cir. 1979), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). We find such to be the case here.

*v. Goodwin*, 625 F.2d 693, 698 (5th Cir. 1980). Although Kittle himself may not have driven the stolen tractor and trailer to Georgia, the record is replete with instances of his aiding and abetting the commission of these offenses, as charged in the indictment and instructed by the court. *See United States v. Eddy*, 597 F.2d 430, 433 (5th Cir. 1979).

The convictions are accordingly

AFFIRMED.