**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jewell Dean PICKETT (83–5252); William Lawrence Hill (83–5253); Donald Ray Polsgrove (83–5254); George Arnold Hardesty (83–5255), Defendants-Appellants.**

**Nos. 83–5252 to 83–5255.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 29, 1984.

Decided Oct. 9, 1984.

Rehearing in Nos. 83–5252, 83–5253 and 83–5255 Denied Nov. 12, 1984.

Rehearing Denied in No. 83–5254 Dec. 7, 1984.

Richard N. Bush (argued), Louisville, Ky., for defendant-appellant in No. 83–5252.

Ronald E. Meredith, U.S. Atty., Mikell McMurry, Hancy Jones, III, Asst. U.S. Attys. (argued), Louisville, Ky., for plaintiff-appellee.

James A. Metry (argued), Louisville, Ky., for defendant-appellant in No. 83–5253.

David Kaplan (argued), Louisville, Ky., for defendant-appellant in No. 83–5254.

W. Waverley Townes (argued), Nold, Mosley, Clare, Hubbard & Rogers, Louisville, Ky., for defendant-appellant in No. 83–5255.

Before KENNEDY, Circuit Judge, PHILLIPS, Senior Circuit Judge, and WOODS, District Judge.[*]

CORNELIA G. KENNEDY, Circuit Judge.

Pickett, Hill, Hardesty and Polsgrove were convicted of a single conspiracy count and, in various combinations, on thirty-nine substantive counts of embezzling or obtaining by fraud more than $60,000 in federal funds in violation of 42 U.S.C. § 3795. They appeal on several grounds: the admission of a portion of Hill's confession which inculpated Polsgrove in violation of the *Bruton* rule (*Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); the failure of the trial judge to instruct the jury on multiple conspiracies; the failure to grant separate trials to the four defendants; the admission of two government witnesses' testimony that they had pleaded guilty to charges in this case;

---

[*] Honorable George E. Woods, United States District Court for the Eastern District of Michigan, sitting by designation.

and the handling of certain Jencks Act material in such a way that the jury became aware of its existence. We affirm the convictions of Hardesty, Hill and Pickett. Because of the *Bruton* violation, however, we reverse Polsgrove's conviction and remand for a new trial as to him.

Kentucky's "On the Job Training Employer Compensation Program" rewarded businesses which hired ex-convicts by reimbursing them for one-half of the former convicts' salaries during the training period. The program was financed in substantial part by federal Law Enforcement Assistance Administration funds. Hardesty was placed in charge of the program. Polsgrove worked in Kentucky's Employment Clearing House for Ex-Offenders, another agency in the same building. Between July 1977 and October 1980, Hardesty and Polsgrove set up numerous fictitious businesses with fictitious ex-convict employees in order to receive "reimbursement" from the state program.

Stevenson and Blair, niece and nephew of Polsgrove, were also indicted. They pleaded guilty and testified at trial. Stevenson cashed checks for Polsgrove pursuant to the scheme. She opened checking accounts under various of the fictitious business names. Blair owned Strawberry Inn, a legitimate business for which fictitious employees were created to further the scheme. Stevenson cashed some of the checks at Blair's business.

Appellant Hill admitted to the FBI that he received $150.00 per month in exchange for allowing his address to be used for the fictitious business "Cecil Masonry Company," allowing his sister's address to be used for "Hill Contractors," and allowing a post office box to be taken out in his name for "Jewell Home Decorating Service," a business run by defendant Jewell Pickett. Pickett signed false invoices for Jewell Home Decorating Service. Checks delivered to her address and to the post office box were deposited to an account opened in her name and to Hardesty's own account. There was evidence from which the jury could find that she did not employ any

former convicts. Hardesty's endorsement appeared on checks made out to some of the businesses, and endorsements on checks made out to others were in Hardesty's handwriting.

## I.

█ At trial, an FBI agent testified that Hill had admitted his part in the scheme. In the admission, Hill had named Polsgrove as a key man in the conspiracy. The agent's testimony regarding the confession was admissible against Hill. Since Hill was a defendant, however, he could not be forced to testify and Polsgrove's attorney thus could not cross-examine him about the statement which implicated Polsgrove. Allowing the statement to be admitted as evidence would therefore have violated Polsgrove's sixth amendment right to confrontation. *See Bruton, supra.*

To avoid a *Bruton* problem, the court redacted portions of the statement and had the agent substitute "the individual" for "Polsgrove" while testifying. Nonetheless, Polsgrove contends that it was obvious to the jury whose name was replaced by "the individual," and that the government attempted to suggest to the jury the identity of "the individual." In closing argument the attorney for the government, referring to "the individual," said, "Now, ladies and gentlemen, who was that? ... none other than the defendant, Don Polsgrove." Recognition that the jury would infer that Polsgrove was "the individual" is confirmed in an exchange which occurred in chambers in a conference on what to do about the potential *Bruton* problem:

> Mr. Townes [Hardesty's attorney]: I think it's just going to be a natural reaction the jury is going to draw. I think it's going to be extremely difficult for them to not think post office box and then think Hardesty.
>
> Ms. McMurry [Assistant U.S. Attorney]: Not when they hear the proof. It will go straight to Mr. Polsgrove.

Our review of the record confirms that it does.

The government argues that any *Bruton* problem was cured by the redaction. This court, however, has held that there are circumstances in which there is need to consider "whether mere deletion of the defendant's name will be effective in making the statement non-incriminating as to him." *Hodges v. Rose*, 570 F.2d 643 (6th Cir.), *cert. denied*, 436 U.S. 909, 98 S.Ct. 2244, 56 L.Ed.2d 408 (1978). In *Hodges*, even though the redacted statement did not name the defendant, we found a *Bruton* violation because "the circumstances of the case and other evidence admitted virtually compel the inference that 'blank' is [the codefendant]." *Id.* at 647. The government would distinguish *Hodges* on the ground that there were only two defendants involved, in contrast to the present case where the blank could have referred to any or none of four other defendants, no single codefendant being any more implicated than another. In support, the government cites *Burkhart v. Lane*, 574 F.2d 346 (6th Cir.1978). *Burkhart* does not, however, support the government's position. In *Burkhart* we remanded the action of the District Court because of its failure to consider whether the admission of the redacted confession created a "substantial risk" that the jury considered the confession in determining the non-confessor's guilt. *See id.* at 349. Contrary to the government's characterization, *Burkhart* actually supports the view that *Bruton* may be violated even where there is a redaction.

Under all of the circumstances, we are convinced that there is a "substantial risk that the jury considered [the] confession when deciding [the non-confessor Polsgrove's] guilt." *Burkhart*, 574 F.2d at 349.

Having found a *Bruton* violation, we must consider whether the error was harmless. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Without the Hill statement, the case against Polsgrove consisted primarily of the testimony of Stevenson, whose credibility might have been doubted by the jury. We cannot say that the case against Pols-grove was so overwhelming that the *Bruton* violation was harmless. We therefore reverse Polsgrove's conviction and remand for a new trial.

## II.

Appellants argue that the government's proof did not establish a single conspiracy among all defendants. They also claim it was reversible error for the judge to refuse to instruct the jury as to the possibility of finding multiple conspiracies.

The thrust of appellant's multiple conspiracy argument is that contact between certain of the defendants was insufficient to render them members of the same conspiracy. For example, appellants claim that Hill was in no way involved with Blair; Hardesty was not shown to know Stevenson, Blair or Hill; and Polsgrove was not connected with Pickett, Blair or Wooldridge, (a codefendant who was also convicted of the conspiracy, but who died after conviction.) After pointing out these gaps, appellants cite *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), for the proposition that where several distinct associations are proven, and "the only nexus among them lies in the fact that one man participated in all," there is not a single conspiracy. 328 U.S. at 773, 66 S.Ct. at 1252.

Any understanding of *Kotteakos*, however, is inadequate if not supplemented by consideration of *Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). *Blumenthal* emphasized that the issue in *Kotteakos* was not whether more than one conspiracy was proven—the government had conceded that the proofs revealed several conspiracies—but whether proof of several conspiracies where only one was charged amounted to a variance too substantial to treat as harmless error. The *Kotteakos* Court ruled that in that particular case the error was not harmless. In *Blumenthal*, the Court directly considered the issue dealt with only in dicta in *Kotteakos:* how to draw the line between one conspiracy and multiple conspiracies.

The holding in *Blumenthal* allows more latitude in finding a single conspiracy than does the dicta of *Kotteakos*, and defendant's reliance on *Kotteakos* is therefore misplaced.

■ *Blumenthal* involved five defendants selling whiskey at prices above a price control ceiling. There were two central figures and three distributors. The distributors worked independently of each other. Yet the Court treated all five as being part of a single agreement, stating "the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others." 332 U.S. at 557, 68 S.Ct. at 256. Appellants' argument in the present case that no "employer" had any interest in any other "employer" therefore does not preclude finding a single conspiracy. Indeed, of the four appellants, only Hill was alleged to have acted in a way that was arguably outside the scope of the overall conspiracy. He was not an "employer," nor was he a central figure; he merely accepted payment for the use of his address. Yet, there was evidence that he was told what the address was needed for, thereby rendering his consent an act in conscious furtherance of the conspiracy.

Intertwined with appellants' multiple conspiracy arguments are their respective arguments for separate trials. Each claims to have been substantially prejudiced by the cumulative effect of the evidence against his or her codefendants.

■ Defendants may be joined in a single indictment if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 8(b), Fed.R.Crim.P. "As a general rule, especially in conspiracy cases, parties who are jointly indicted should be tried together." *United States v. Dempsey*, 733 F.2d 392, 398 (6th Cir.1984). Separate trials are mandated only upon a showing of "specific and compelling prejudice resulting from a joint trial which can be rectified only by separate trials." *Id.* (quoting *United States v. Howell*, 664 F.2d 101, 106 (5th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1641, 71 L.Ed.2d 873 (1982)). The defendant has the burden of showing such prejudice. Appellants have not demonstrated such prejudice in this case. Most, if not all, of the evidence relating to all of the appellants was necessary to show the agreement to act together in this scheme to defraud the government and embezzle federal funds.

■ Only Hardesty made a specific claim of prejudice. He claimed to wish to call some of his codefendants as witnesses. However, Hardesty's mere assertion that codefendants would testify, and that their testimony would exculpate him, is insufficient to grant severance. Where prejudice resulting from a joint trial is speculative only, "an intention of the movant to have his codefendant testify has never been considered ground for severance." *Smith v. United States*, 385 F.2d 34, 38 (5th Cir. 1967). Absent a showing that the desired testimony would actually materialize and be relevant, Hardesty's severance motion was properly denied.

### III.

Appellants allege that reversible error was committed with regard to the handling of certain Jencks Act materials. During cross-examination of Stephen Bail, a government witness, the prosecutor handed the witness' previous statement[s] to defense counsel in the presence of the jury. Counsel objected. After overruling the objection, the trial court stated that it would explain to the jury what the documents handed over were, and explained the Jencks Act. After the District Court made the explanation, counsel objected to this as well.

■ We agree with the position expressed by the Seventh Circuit in *United States v. Nielsen*, 392 F.2d 849 (7th Cir. 1968):

Generally, we believe that the request, tendering, receipt, and inspection of Jencks Act statements should take place outside the presence of the jury, if counsel so requests. We are incapable, however, of envisioning every situation relating to the production of Jencks Act statements. Consequently, instead of establishing an inflexible rule to be followed in every future case, we leave the manner of proceeding in such situations to the sound discretion of the trial judge.

*Id.* at 854. As that court and others have recognized, the jury may infer that if the Jencks Act statements are not used in cross-examination that the witness' present testimony is consistent with the statement. *United States v. Curry*, 512 F.2d 1299 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975); *United States v. Frazier*, 479 F.2d 983 (2d Cir.1973); *United States v. Middleton*, 458 F.2d 482 (5th Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972); *United States v. Lepiscopo*, 429 F.2d 258 (5th Cir.), *cert. denied*, 400 U.S. 948, 91 S.Ct. 255, 27 L.Ed.2d 254 (1970); *Beaudine v. United States*, 414 F.2d 397 (5th Cir.1969), *cert. denied*, 397 U.S. 987, 90 S.Ct. 1116, 25 L.Ed.2d 395 (1970); *United States v. Gardin*, 382 F.2d 601 (2d Cir.1967); *Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966); *Johnson v. United States*, 347 F.2d 803 (D.C.Cir.1965).

With the exception of *Johnson* and *Gregory*, the courts have not reversed convictions because the jury became aware that the government had provided such statements. The circumstances in *Johnson* and *Gregory* differed significantly from those here. In *Johnson*, the prosecutor in closing argument stated that there had been no effort to impeach the witness and that statements corroborated the witness. The statement had not been introduced in evidence. In *Gregory*, the trial judge over defendant's objection had repeatedly required defense counsel to ask for the statements in the jury's presence.

■ In the instant case the record disclosed only a single instance in which the prosecutor passed a statement of a witness to defense counsel in the jury's presence. Standing alone this act was innocuous. Regrettably, the trial judge explained to the jury what the particular document was, and also informed the jury that the prosecutor had similar statements for an unspecified number of subsequent witnesses and that, as required by the Jencks Act, she would give those statements to defense counsel prior to their cross-examination rather than during it. Communicating this information to the jury served no useful purpose and created the potential for prejudice to the defendants. We find however that any error was harmless in the instant case.

The issue arose during cross-examination of Bail. Bail's testimony was merely peripheral to the government's case so that even if his testimony were improperly bolstered by the inference that it was consistent with his prior statement, the inference was harmless.

With respect to other witnesses, appellants would have us infer prejudice simply because the jury had knowledge that some unspecified government witnesses had made prior statements. The inference is too speculative to establish prejudice. The jury had no more specific knowledge than jurors have in every other case where they may reasonably suppose that some of the government's witnesses had given prior statements.

## IV.

During the direct examination of Stevenson and Blair, the attorney for the government elicited from them testimony that they had entered guilty pleas in the case. This evidence was relevant to the witnesses' credibility. Pursuant to defendants' objections, the judge admonished the jury "not to consider the fact of those guilty pleas by these two witnesses as evidence of guilt on the part of any other defendant in this case."

■ When testimony of this nature is heard by the jury, care must be taken to

see that it is not improperly emphasized or used as substantive evidence of a defendant's guilt. In most cases, an adequate instruction will suffice to give the jury the proper perspective on the testimony. *See United States v. Fife,* 573 F.2d 369, 374 (6th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51 L.Ed.2d 777 (1977). Here there is no reason to believe that the jury was not capable of abiding by the trial judge's clear and direct corrective instruction.

## V.

Appellants allege several other errors. We have reviewed the record and find these claims to be meritless. The trial judge did not abuse his discretion in allowing witnesses' memories to be refreshed by showing them their prior statements, or in allowing the use of summary testimony and summary charts. The admission of a co-conspirator's possibly post-conspiracy statement was not prejudicial. The statutory language of 42 U.S.C. § 3795 is not unconstitutionally vague. The evidence with respect to each appellant was sufficient to support the jury's verdicts. Finally, the imposition of consecutive sentences for substantive and conspiracy counts is permissible. *See Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

## VI.

The convictions of Pickett, Hill and Hardesty are affirmed. The conviction of Polsgrove is reversed and his case remanded for a new trial.