785 F.2d 311
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
DONALD RAULERSON (83-5555, 84-5059),
ROBERT A. BURNETTE, SR. (83-5668, 84-5057),
TRAVIS W. BURNETTE (83-5669, 84-5056),
JOETTE CHEATHAM (83-5697, 84-5058), Defendants-Appellants.
 83-5555, 83-5668, 83-5669, 83-5697, 84-5056, 84-5057,
84-5058, 84-5059
 United States Court of Appeals, Sixth Circuit.
 1/31/86
 
 BEFORE: JONES and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Donald Raulerson, Joette Cheatham, Robert A. Burnette, Sr. and his brother Travis W. Burnette were indicted along with five others and convicted of conspiracy to possess and distribute marijuana and methaqualone in violation of 21 U.S.C. Secs. 841(a)(1) & 846. Raulerson was convicted of a substantive count of possession with intent to distribute 86 pounds of marijuana; Travis Burnette and Cheatham were acquitted of that charge. Raulerson and both Burnettes were convicted of possession with intent to distribute 20,000 tablets of methaqualone; Cheatham was also acquitted on that count. In these consolidated appeals the four defendants challenge their convictions on several grounds. We affirm in all respects and discuss each asserted error briefly.
 
 A.
 
 2
 Raulerson asserts that the indictment improperly charged a single conspiracy where the proof showed several separate conspiracies, resulting in the admission of co-conspirator testimony that was prejudicial to Raulerson's defense of the substantive charges. As will be seen, the case involves several separate transactions and not all defendants were involved in each, but these facts do not defeat the finding of a single conspiracy where all agreements are 'tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result.' Blumenthal v. United States, 332 U.S. 539, 558 (1947). The proof showed an evolving set of relationships all directed toward one end--the importation and sale of narcotics in Memphis, Tennessee.
 
 
 3
 In early 1982 Raulerson was serving a sentence at the Federal Correctional Institute in Memphis for a prior conviction of the sale of narcotics. While in prison, Raulerson engaged Kenneth Herman to collect, on commission, a debt owed by Buster Arnwine to Raulerson from an earlier marijuana sale. The money was to be turned over to Joette Cheatham, Raulerson's girlfriend, for safekeeping. Herman, with Cheatham's assistance, collected some $116,000 from Arnwine in Knoxville and, when it appeared that Arnwine could pay no more, Herman agreed to accept as final payment the last 100 pounds of the marijuana Arnwine had bought from Raulerson. Herman enlisted the aid of his friend Buddy Moss to transport the marijuana from Knoxville to Memphis. Herman kept 10 pounds and Moss sold the rest to his acquaintance, Travis Burnette. Moss gave the proceeds to Herman and Cheatham. Raulerson later ratified this resale by giving Arnwine credit for the return.[1]
 
 
 4
 Cheatham then asked Moss if he was interested in distributing more narcotics. When Moss indicated he was, Cheatham put him in direct contact with Raulerson, and the two men agreed to further dealings.[2] In the fall of 1982 Cheatham notified Moss of the delivery of 20,000 methaqualone tablets, which had come from Raulerson's sources. Moss accepted the drugs and passed them on to Robert Burnette for resale. When payment was not forthcoming, Raulerson engaged Herman and later Reginald Goldsmith, a former cellmate of Raulerson, to collect from Moss; Moss directed the men to Robert Burnette. Goldsmith, who by this time had become a government informant, learned that the Burnette brothers were willing to give Raulerson a part interest in their liquor store as security for the methaqualone debt. This was done. Building on this relationship, both Raulerson and Robert Burnette, with Goldsmith acting as messenger, agreed to make further deals for the distribution of narcotics including a sale of 200 pounds of marijuana and another 20,000 methaqualone tablets.
 
 
 5
 In March 1983 Goldsmith and Robert Burnette finalized plans for the methaqualone deal. On March 3 Goldsmith attempted delivery but could not locate Robert Burnette, and Travis Burnette agreed to accept the tablets. Contrary to Burnette's belief, however, these were not Raulerson's goods, for the government had supplied this methaqualone to Goldsmith. When delivery was made, Travis Burnette was arrested.
 
 
 6
 Viewing the evidence in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), we think the jury could properly have concluded that a single conspiracy was shown. It is not fatal to the government's case that Raulerson had no connection with the Burnettes when these events began, nor that Herman, Moss and Cheatham may not have been involved in the final Raulerson-Goldsmith-Burnette dealings. As the Supreme Court observed in Blumenthal,
 
 
 7
 [Conspiracies] are not born full grown. Rather they mature by successive stages which are necessary to bring in the essential parties. And not all of those joining in the earlier ones make known their participation to others later coming in.
 
 
 8
 332 U.S. at 556. See also United States v. Pickett, 746 F.2d 1129, 1133-34 (6th Cir. 1984), cert. denied, 105 S. Ct. 1222 (1985). All of the convicted participants were committed to aiding Raulerson in the continuing distribution of drugs. They served different roles at different times but always with the same overall goal.
 
 B.
 
 9
 The defendants argue that the jury foreman in their trial was not a resident of the district wherein the trial was held, violating the statutory provisions governing the selection of jurors, 28 U.S.C. Sec. 1865(b)(1) (1982), and the Sixth Amendment right to trial by a 'jury of the State and district wherein the crime' was committed. We think this claim is adequately answered by the trial judge's finding, supported by evidence adduced at a post-trial hearing, that the juror was in fact a resident of Memphis, Tennessee, despite his temporary sojourn in adjacent Arkansas during the period of lay-off from his Memphis job. Even apart from this finding, however, the defendants did not demonstrate that the juror's alleged out-of-district residency resulted in any bias against the defendants nor that the juror's statement at voir dire that he was a Tennessee resident was any more than 'a mistaken, though honest response.' See McDonough Power Equipment, Inc. v. Greenwood, 104 S.Ct. 845, 850 (1984); see also McCoy v. Goldston, 652 F.2d 654, 659 (6th Cir. 1981).
 
 C.
 
 10
 Defendant Cheatham asserts that the trial judge disparaged and intimidated the entire defense counsel team throughout the trial, thereby prejudicing the defendants in the eyes of the jury and depriving her of a fair trial. We have surveyed the record of the trial and find no reversible error. While some of the judge's comments may have been unnecessary, most were made out of the hearing of the jury and in response to heated arguments of counsel. Cf. United States v. Worthington, 698 F.2d 820, 826-27 (6th Cir. 1983). This is not a case where the judge's performance before the jury was so pervasively in favor of the prosecution that the jury was 'unable to freely perform its function of independent fact finder.' United States v. Hickman, 592 F.2d 931, 936 (6th Cir. 1979). The fact that Cheatham was acquitted of two of the charges against her is further indication that the jury was not prejudiced by the judge's actions.
 
 
 11
 Having reviewed the defendant's assertions of error and finding no grounds for reversal, we conclude that the judgments must be AFFIRMED.
 
 
 
 [1]
 Raulerson argues that because this marijuana was the remainder of the same consignment he had been convicted of possessing earlier, this second conviction amounts to double jeopardy. Clearly, however, these are two separate acts of possession and proof of one would not have served as proof of the other despite the identity of the contraband. Having once been convicted of possession of this marijuana Raulerson did not gain an immunity from prosecution for a latter repossession. See United States v. Hairrell, 521 F.2d 1264, 1266 (6th Cir.), cert. denied, 423 U.S. 1035 (1975)
 
 
 [2]
 Cheatham asserts that the evidence was insufficient to support her conviction as part of the conspiracy. We think the testimony of Moss regarding this solicitation of his services by Cheatham amply supports the jury verdict