2 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen KONSTENIUS, Paul Wright, Defendants-Appellants
 Nos. 92-1609, 92-1539.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1993.
 
 Before MARTIN, SILER and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Stephen Konstenius and Paul Wright, along with three codefendants, were indicted together on May 17, 1991 for conspiracy to possess and distribute ephedrine, a "listed precursor chemical" under 21 U.S.C. Secs. 841(d)(2) and 846. This chemical has legal uses, but is commonly used to make the illegal drug methamphetamine. Konstenius was also charged with two counts of possession of ephedrine, 21 U.S.C. Sec. 841(d)(2); one count of employing a person under 18 years old in a drug crime, 21 U.S.C. Sec. 861(a)(1); one count of importing ephedrine, 21 U.S.C. Sec. 960(d)(2); and one count of engaging in a continuing criminal enterprise, 21 U.S.C. Sec. 848(a)(c). Two of the coconspirators, Patrick Burns and Paul Getzen,[1] pled guilty and testified against the appellants. Appellants were convicted on all counts by a jury on January 31, 1992. Defendant Wright timely filed a motion for judgment of acquittal or for a new trial in response to which the District Court issued a memorandum opinion in favor of the Government on all matters on February 19, 1992. Wright was sentenced to 57 months in prison, to be followed by three years supervised release, and a fine; Konstenius received 264 months and five years supervised release. Appellants filed timely appeals. We affirm.
 
 
 2
 According to testimony given at trial, Konstenius masterminded and ran a fairly extensive illegal operation obtaining ephedrine, sometimes from abroad. Konstenius ordered the chemical from scientific supply houses, representing himself as a scientist who ran the "Institute for Advanced Research" (IAR) in Royal Oak, Michigan. Konstenius, or his henchmen, one of whom was alleged to be Wright, would send the ephedrine to California, where the actual manufacturing of the drugs apparently took place. The Californians would then send Konstenius air courier packages full of money and methamphetamine in payment. A number of people got tangled in Konstenius's web, including his own fifteen-year-old son, in whose bedroom in Konstenius's Florida home agents found drug manufacturing paraphernalia and "how-to" books detailing methods of manufacturing methamphetamine, and Michelle Smeadala, Burns's seventeen-year old niece, who apparently served as something of an administrative assistant for the operation. While the details of this complex scheme are interesting, we need restate few of them to address the issues presented here.
 
 
 3
 Paul Wright's issues raised on appeal.
 
 
 4
 1. Prejudice caused by Government's closing argument.
 
 
 5
 Wright first argues that comments made during the Government's closing argument were substantially prejudicial to him, and that a mistrial should have resulted. During closing, government counsel, in responding to the defense's argument that those government witnesses who had pled guilty had greater incentive to lie, argued that such witnesses actually had less incentive to lie, since they were appearing before the judge who would ultimately sentence them. Wright argues that where the prosecution suggests that the judge is actively involved in assuring the credibility of certain witnesses, mistrial necessarily results. Since Getzen's and Burns's testimony was so crucial to Wright's conviction, he argues that these comments most likely prejudiced the jury.
 
 
 6
 In general, prosecutors may not place the sanction of their office behind an endorsement of friendly witnesses' testimony or otherwise vouch for their veracity and trustworthiness. United States v. Dorr, 636 F.2d 117, 120 (5th Cir.1981). However, an unfair trial results only where the impropriety of the prosecutor's argument is "so pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). "[A]s long as the jury's ability to judge the evidence fairly remains intact," mistrial or reversal will not result. Id. A reviewing court may take the strength of the Government's proof against the defendant into account in making this determination, id.; it may also consider the effectiveness of jury instructions, if given, Dorr, 636 F.2d at 121.
 
 
 7
 Here, the Government's case was strong with regard to both defendants; the convictions hinged neither on the testimony of a single witness nor on the existence of a single piece of evidence. Defense counsel took the opportunity in its own closing to challenge the Government's assertion. Further, the District Court instructed the jury that judging credibility was the jury's, not the judge's job, and thus took appropriate and prompt measures to cure any misconceptions about the Government's statements, which in any case were not as egregious as those in the cases cited by defendants. In Dorr, government counsel speculated in his closing that the defendants and their lawyers suspected the judges and prosecutors involved in the case of conspiring against them, something that the defense simply had not suggested. 636 F.2d at 120. In United States v. Roberts, a more similar case, the prosecutor suggested in closing that a detective had been sitting in court to make sure the Government's witnesses who had pled guilty testified truthfully. 618 F.2d 530 (9th Cir.1980). In that case, however, the court held that the conviction was not supported by strong evidence; more importantly for our purposes, the trial court did not take "prompt corrective action." 618 F.2d at 534-35. While the impression that the judge is there in part to ensure the veracity of witnesses' statements is a powerful one, easily abused, enough safeguards were present here, and the case was well enough supported by a variety of evidence and testimony, that a fair assessment by the jury was preserved.
 
 
 8
 2. Deviation of the Government's evidence from the bill of particulars.
 
 
 9
 Early on in this case, the court ordered the Government to file a bill of particulars providing more specific information on Wright's suspected involvement in the conspiracy. The bill of particulars did not include any information about or mention of "Randy." At trial, Burns testified that "Randy" was Wright's West Coast sales connection. Since this testimony came, Wright says, as a surprise to him, and since he had no time or opportunity to prepare a defense or to call Randy to testify, his case was substantially prejudiced. Wright claims that these "ambush" tactics warrant a mistrial and reversal of his conviction.
 
 
 10
 Wright's lawyer did object at trial to the introduction of the testimony regarding "Randy"; Wright therefore did not waive his right to appeal this issue. However, variance from a bill of particulars is not of the same gravity as variance from allegations specified in an indictment. United States v. Williams, 962 F.2d 1218, 1225 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). The proper response to an objection based on variance from a bill of particulars is amendment of the bill of particulars, which is freely available under Fed.R.Crim.P. 7(f). Id. at 1225-26.
 
 
 11
 One recent case neatly describes the nature of the bill of particulars with the following observations:
 
 
 12
 A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial. Further, a defendant is not entitled to discover all the overt acts that might be proven at trial.
 
 
 13
 United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir.1993) (citations omitted). Thus, variance between evidence proven at trial and facts alleged in the bill of particulars is only cause for reversal upon a showing of unfair prejudice. Williams, 962 F.2d at 1226. And, given the greater seriousness with which variances from indictments are treated, we may assume a fortiori that the placement of the burden of proof of prejudice in that context on the defendant applies in the context of variance from a bill of particulars. See United States v. Bouquett, 820 F.2d 165, 168 (6th Cir.1987) ("[T]he burden of proof rests upon the defendant to prove that the variance [from the indictment] is fatal.").
 
 
 14
 In this case, the information about "Randy," while not irrelevant, was at best peripheral to the case against Wright. Even had the Government known about Burns's intention to talk about Randy, as the Salisbury court pointed out, the defendant has no generalized right to such detailed information. There is no indication in this case that Wright was unfairly surprised or was otherwise unable to defend himself against an unanticipated allegation. As the Government notes, defense counsel was able to cross-examine Burns on this matter, and the Government turned over all the information it had as to the whereabouts of Randy. Wright suffered no unfair prejudice in this context, and the Government did nothing improper.
 
 
 15
 3. Admission of hearsay statements under the co-conspirator exception.
 
 
 16
 Wright argues that the District Court erred in admitting hearsay statements testified to by the co-defendants under the co-conspirator exception. He points out that the evidence was admitted conditionally; since he argues the Government did not adequately prove his involvement in a conspiracy, the statements should not have been admitted, and a mistrial is warranted.
 
 
 17
 Under Bourjaily v. United States, 483 U.S. 171 (1987), the proponent of hearsay statements of an alleged coconspirator need prove the conspiracy only by a preponderance of the evidence. 483 U.S. at 176. That evidence may include the statements themselves. Id. at 178-180. The court admitted the evidence conditionally on the Government's promise eventually to prove the conspiracy, and Wright does not challenge this procedure; rather, he rests his objection on his contention that the Government did not prove the conspiracy. However, as we demonstrate in the next subsection, this argument must fail.
 
 
 18
 4. Sufficiency of the evidence.
 
 
 19
 Wright also challenges his conspiracy conviction on the basis of insufficient evidence. The information about his involvement was so "vague and ambiguous," he contends, that his conviction cannot stand. Wright claims the worst that can be said about his involvement was that it constituted "preliminary discussions" of "possible drug transactions" which do not give rise to a conspiracy as charged.
 
 
 20
 The Government argues that Wright has waived his right to appeal the denial of his Rule 29 motion except for "manifest miscarriage of justice," noting that in United States v. Williams, 940 F.2d 176 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991), we held that where a defendant makes a Rule 29 motion at the close of the Government's case, but does not renew his motion at the close of all the evidence, he has waived his objection to the sufficiency of the evidence. 940 F.2d at 180. Here, however, while Wright did not renew his Rule 29 motion at the conclusion of his case or at the conclusion of the Government's rebuttal case, he did renew the motion after the jury had rendered its verdict. The general rule is where the defendant moves for a Rule 29 judgment of acquittal at the close of the Government's case, then proceeds to present evidence in his own defense, he has waived his original motion. United States v. Castro-Lara, 970 F.2d 976, 980 (1st Cir.1992), cert. denied, 124 L.Ed. 684 (1993). However, regardless of whether he moves for judgment of acquittal during the trial, Rule 29(c) gives a defendant seven days to make such a motion after the jury returns its guilty verdict. Id.; see also United States v. Black, 525 F.2d 668 (6th Cir.1975). We therefore consider Wright's post-verdict motion as having preserved his right to appeal sufficiency of the evidence.
 
 
 21
 Ample evidence appears in the record to support Wright's conviction as a conspirator. He was a co-signatory on the company bank account which Burns testified was used to fund illicit transactions. Wright frequently passed on orders from Konstenius to Burns; for example, he orchestrated the delivery of a $40,000 payment for a chemical shipment to California, told Burns to take the money to Konstenius, and then went to a hotel with Burns to help count the money. Konstenius intended for Wright to receive $10,000 from a sale being arranged to the Hell's Angels motorcycle gang. Wright had his own connection in California, "Randy," with whom Burns also spoke often about illicit transactions and from whom Wright tried to get Burns a $2,000 cut. Despite his purportedly being "not very intelligent" and having difficulty "reading, writing, or speaking coherently," Wright told Burns in great detail about how methamphetamine was manufactured, and, as described, helped manage the operation. Michelle Smeadala, Burns's niece, said that Wright "kept people in line" and was "involved in the whole thing."
 
 
 22
 As the District Court correctly decided, while some of the evidence against Wright was circumstantial, the evidence supports the jury's finding him guilty beyond a reasonable doubt of conspiracy to possess and distribute ephedrine.
 
 
 23
 5. Variance between indictment and conviction.
 
 
 24
 As a final matter, Wright contends that he suffered substantial prejudice due to the "variance" between the single conspiracy charged and what was proven at trial, which he characterizes as multiple conspiracies. Since he was implicated by association in conspiracies in which he says he did not participate, Wright argues the jury was thereby prejudiced and a mistrial should result.
 
 
 25
 Wright appears to intermingle two distinct issues: variance between the conspiracy proven and the conspiracy charged, and prejudice caused by conducting a joint trial. Although it is impossible to tell from the abbreviated district court docket contained in the joint appendix, and the parties do not provide any help as to the procedural background in their briefs, it appears from the post-trial memorandum opinion and order of the district judge that Wright requested pre-trial that he be tried separately from Konstenius, that request was denied, and was one of the grounds for his post-trial motion for a judgment of acquittal or new trial. Since the District Court addressed both issues in denying Wright's motion, both are properly before this court on appeal.
 
 
 26
 The case Wright cites to support his argument that an impermissible variance existed between the single conspiracy charged, and the resulting proof, which he argues showed several conspiracies, actually argues against his position. True, where "several distinct associations are proven, and 'the only nexus among them lies in the fact that one man participated in all,' there is not a single conspiracy." United States v. Pickett, 746 F.2d 1129, 1133 (6th Cir.1984), cert. denied, 469 U.S. 1226 (1985) (quoting Kotteakos v. United States, 328 U.S. 750, 773 (1946)). However, even where certain conspirators act without knowledge of each other's activity, or of the scope of the entire scheme, a single conspiracy may exist, Pickett, 746 F.2d at 1134, (citing Blumenthal v. United States, 332 U.S. 539 (1947)); and " '[a]s a general rule, especially in conspiracy cases, parties who are jointly indicted should be tried together,' " Pickett, 746 F.2d at 1134 (citing United States v. Dempsey, 733 F.2d 392, 398 (6th Cir.1984))) and the defendant has the burden of showing " 'specific and compelling prejudice ... which can be rectified only by separate trials,' " Pickett, at 1134, (citing United States v. Howell, 664 F.2d 101, 106 (5th Cir.1981), cert. denied, 445 U.S. 1005, 102 S.Ct. 1641 (1982)).
 
 
 27
 Wright claims only that the Government failed to "establish any link--let alone concerted action--between Appellant Wright and either James Bookey or David Hutchins." As the cases illustrate, concerted action is not a prerequisite to being members of the same conspiracy; the link is the series of crimes orchestrated by Konstenius in which Wright, and the others, actively participated. Konstenius was the ringleader; he was not, as evidently was the case in Kotteakos, simply a criminally active individual who happened to be involved in several unrelated conspiracies simultaneously. The record thus does not show that this supposed variance affected Wright's "substantial rights"; that is, he has not proven "prejudice to his ability to defend himself, to the overall fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions." United States v. Bouquett, 820 F.2d 165, 168 (6th Cir.1987).
 
 
 28
 Stephen Konstenius's issues raised on appeal.
 
 
 29
 1. Relevance of Konstenius's explanation for obtaining and possessing ephedrine.
 
 
 30
 Part of Konstenius's "cover" involved a fish hatchery he owned in Michigan. To explain his need for quantities of the restricted chemical, he sometimes represented that he was experimenting with feeding whitefish ephedrine to make them bigger. While he did not use this explanation at trial in his own defense, it nonetheless came up in testimony. Konstenius's first contention on appeal is that the District Court should not have admitted the testimony of DEA agent David Broccio that Konstenius told him he used ephedrine only to experiment on making whitefish grow bigger, and the testimony of a professor who said that ephedrine has no such effect on fish, and reported Konstenius's hatchery to be in disuse. Since this evidence only anticipated a defense which he never raised, Konstenius argues, the professor's statement constituted "reputation evidence" improperly put forth except as rebuttal evidence. The evidence, he says, was thus irrelevant and prejudicial.
 
 
 31
 Essentially, Konstenius argues that his statements indicating his intent to use ephedrine to improve the growth of hatchery-bred whitefish were not relevant. According to Fed.R.Evid. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence of anything "within the entire scope of the conspiracy" is admissible unless its probative value is outweighed by undue prejudice. United States v. Kelley, 849 F.2d 999, 1004 (6th Cir.1988), cert. denied, 488 U.S. 982 (1989). The "rule of thumb" is that "evidence of credibility is relevant." Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure Sec. 5177 (1980). The treatise warns that "the question of relevance is sometimes confused with questions of the scope of cross-examination and the order of proof." Id. This seems to be the case with the defendant's argument; the fact that Konstenius did not stick with his fish story at trial does not render it off limits or irrelevant to showing his state of mind.
 
 
 32
 2. Constitutionality of 21 U.S.C. Sec. 841(d)(2)'s outlawing possession of listed chemical with "reasonable cause to believe" it will be used illegally.
 
 
 33
 Konstenius next contends that the statute making it a crime to possess and "hav[e] reasonable cause to believe" that a "listed" substance will be used to manufacture drugs violates the Constitution in that it lightens the Government's burden of proof and makes a negligent act a crime. As the Government notes, we recently upheld a statute challenged as unconstitutional due to its "reason to know" mens rea in United States v. Wuliger, 981 F.2d 1497, 1503 (6th Cir.1992). We discussed cases which had approved the "reason to know standard," among them statutes prohibiting the "delivery or manufacture of drug paraphernalia by one who knew or had reason to know that the item would be used to make drugs." Id. at 1504 (citing cases). Several courts have "viewed as constitutionally proper 'that the seller be required to open his eyes to the objective realities of the sale.' " Id. (quoting Kansas Retail Trade Coop. v. Stephan, 695 F.2d 1343, 1346 (10th Cir.1982)). We held in Wuliger that while a negligence standard, "reasonable foreseeability," does not alone suffice in proving the requisite mens rea, such foreseeability may nonetheless be considered along with other evidence that the defendant "had reason to know a fact." Id. We did not see this mens rea as constituting a lesser, constitutionally impermissible standard of proof. This argument therefore fails.
 
 
 34
 3. Sufficiency of the evidence.
 
 
 35
 Lastly, Konstenius challenges the sufficiency of the evidence used to convict him of "running a continuing criminal enterprise" in violation of 21 U.S.C. Sec. 848. The Government did not prove that he received "substantial income" from criminal activities, he argues; he acknowledges only that he received money from several individuals, but not for criminal purposes. The statute is only intended to apply to "extremely large scale dealers," he insists.
 
 
 36
 Konstenius initially moved at the close of the Government's case against him for a judgment of acquittal based on insufficient evidence, citing Fed.R.Crim.P. 29. However, in order to preserve this challenge, Konstenius was obliged to renew this motion at the close of all the evidence. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984)). As we stated above, where defendant moves for acquittal under Rule 29, then goes on to present his own case, he is considered to have waived his initial motion. Castro-Lara, 970 F.2d at 980. Since the record does not reflect that Konstenius renewed his objection after the close of evidence, or after the jury reached its verdict, he has waived this objection; we may only reverse his conviction if the evidence was so insufficient that a "manifest miscarriage of justice" has occurred. Faymore, 736 F.2d at 334.
 
 
 37
 Here, the evidence showed that Konstenius's "institute" was run out of his apartment; he directed and controlled a large operation selling both methamphetamine and the chemical precursors of the drug. He personally received large cash payments, as well as valuable drugs, for dealing in the chemicals. Several witnesses testified to this effect consistently. This evidence is more than enough to support a finding beyond a reasonable doubt that Konstenius received "substantial income" from dealing restricted chemicals. As the court observed in United States v. Jones, 801 F.2d 304, 310 (8th Cir.1986), one need not be a "Mafia-type Godfather[ ]" to be convicted under Sec. 848; the law extends even to "Arkansas residents living in rented houses and riding old motorcycles." Konstenius's conviction was no miscarriage of justice.
 
 
 38
 For the reasons explained, the convictions of Paul Wright and Stephen Konstenius are AFFIRMED.
 
 
 
 [1]
 Burns was a codefendant in the case against Konstenius and Wright. Getzen pled to another, related indictment