**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alberto CASTRO (89–1528), Ignacio Forte (89–1530), Guillermo Rocha (89–1531), Jaime Giraldo (89–1893), Norberto Giraldo (89–1894), Defendants–Appellants.**

Nos. 89–1528, 89–1530, 89–1531, 89–1893 and 89–1894.

United States Court of Appeals, Sixth Circuit.

Argued and Submitted May 1, 1990.

Decided July 17, 1990.

---

Mark Andrew Miller, Asst. U.S. Atty., Stanley J. Janice, Asst. U.S. Atty. (argued), Detroit, Mich., for U.S.

Jon A. May, May & Cohen, Miami, Fla., for Alberto Castro.

Edward Wishnow (argued), Southfield, Mich., for Ignacio Forte.

Christopher A. Andreoff (argued), Evans & Luptak, Detroit, Mich., for Guillermo Rocha.

Michael J. O'Kane (argued), Ft. Lauderdale, Fla., for Jaime Giraldo.

Michael J. O'Kane (argued), Ft. Lauderdale, Fla., for Norberto Giraldo.

Before GUY and NELSON, Circuit Judges; and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

After a trial lasting from January 25, 1989, to February 8, 1989, a jury found Alberto Castro, Guillermo Rocha, and Ignacio Forte guilty of participating in a conspiracy to distribute cocaine and of posses-

sion with intent to distribute cocaine. A jury also found Guillermo Rocha guilty of interstate travel in aid of racketeering. Jaime and Norberto Giraldo entered pleas of guilty to conspiracy to distribute cocaine, conspiracy to launder monetary instruments, and conspiracy to engage in monetary transactions derived from controlled substances distribution.

Defendants Castro, Forte, and Rocha claim that the district court erred by allowing evidence of money laundering transactions for which no charges had been brought against them. Rocha claims in addition that (1) the trial court abused its discretion by not declaring a mistrial to allow him to substitute counsel; (2) he received ineffective assistance of counsel; (3) his indictment resulted from government misconduct before the grand jury; (4) the government attorney's improper comments during the opening statement and closing argument deprived him of his constitutional right to a fair trial; and (5) the court erred by failing to make the required finding as to the existence of a conspiracy and the admissibility of co-conspirator statements. Rocha and Castro both argue that the district court improperly gave them four-level increases under the sentencing guidelines for being leaders or organizers of the conspiracy. The Giraldos assert that the district court should have granted them two-point reductions for acceptance of responsibility.

This case was tried before Judge Horace Gilmore and a jury. The record of the trial clearly indicates that, although this case must be remanded to the district court in order for the district court to make the required finding regarding the admissibility of co-conspirator statements, the judgment of the district court should be affirmed in all other respects.

## I.

In this case, undercover U.S. Customs agents posed as money launderers in order to infiltrate a large-scale cocaine trafficking organization. From October 1987 to March 18, 1988, defendants Jaime and Norberto Giraldo and others delivered suitcases full of large amounts of cash—totalling over $8,000,000.00—to undercover agents for laundering. The undercover agents worked with unscrupulous bank officials in order to transfer the money to accounts of so-called "drug lords" in Colombia. The cash flow purportedly slowed in March of 1988 because of the assassination of the Attorney General in Colombia and the shooting of one of the main Colombian drug traffickers.

In June of 1988, defendant Castro agreed to pay a co-conspirator, Eduardo Jiminez, to drive a 99 kilogram load of cocaine secreted in five "Dole" banana boxes from the New York area to Detroit. Jiminez asked defendant Forte to ride with him to Detroit. During the trip, Jiminez informed Forte that they were hauling cocaine. Forte was initially angry when he learned what the truck contained, but upon arrival to Detroit he assisted Jiminez with unloading the cocaine and transferring it to another vehicle. The defendants were arrested shortly thereafter.

Evidence at trial indicated that from November 1987 to June 1988, defendant Castro employed individuals to transport large amounts of cocaine from Florida and elsewhere to Detroit and other cities in his semi tractor-trailer. Defendant Guillermo Rocha employed persons to transport cocaine from Florida to Detroit in cars equipped with secret compartments and to transport cash proceeds from the sale of cocaine from Detroit to Florida. During the course of the conspiracy, Rocha allegedly directed an estimated 150–250 kilograms of cocaine to the Detroit area. He enlisted a co-conspirator to travel to New York to obtain cocaine, and he facilitated the transfer of that cocaine upon its arrival to Detroit.

## II.

During the jury trial, the government introduced testimony of a U.S. Customs agent regarding the laundering of the proceeds from the distribution and sale of cocaine. Although none of the defendants on trial were charged with money laundering, the government sought to link Castro,

Forte, and Rocha to approximately half a ton of cocaine through these money laundering activities. The jury found the defendants guilty of conspiracy to distribute cocaine, but found that the government had proved only 119 kilograms were involved in the case of Rocha and 99 kilograms in the cases of Forte and Castro.

Financial aspects of drug trafficking represent an integral part of a conspiracy to distribute controlled substances. In fact, "[i]mporters, wholesalers, purchasers of cutting materials, and persons who 'wash' money are all as necessary to the success of the venture as the retailer." *United States v. Barnes*, 604 F.2d 121, 154–55 (2nd Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); see also *United States v. Tedder*, 801 F.2d 1437, 1447 (4th Cir.1986), *cert. denied*, 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987) ("Money laundering and drug trafficking are often intimately connected."). For this reason, evidence of the currency collections connected with the drug trafficking at issue did not constitute a variance from the charged conspiracy in view of additional evidence indicating defendants' knowledge and intent. See *United States v. Tedder*, 801 F.2d at 1447.

Moreover, the prejudicial effect of this evidence did not outweigh its probative value under Rule 403 of the Federal Rules of Evidence.* This Circuit has stated that the decision as to whether evidence is admissible under Rule 403 is left to the sound discretion of the trial court, and has emphasized that the value of the evidence must be *substantially* outweighed by its prejudicial character in order to justify its exclusion under Rule 403. *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.1979), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979). An appellate court must review this exercise of discretion "in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v.*

*Zipkin*, 729 F.2d 384, 389 (6th Cir.1984). Evidence of money laundering was highly probative of the defendants' involvement in a large conspiracy involving numerous participants and the distribution and sale of an estimated half ton of cocaine. Although the jury did not find the evidence of a link to this quantity of cocaine convincing, nevertheless the judge did not abuse his discretion in allowing testimony concerning the extent of the unlawful activity.

## III.

■ The district court properly denied the defendant's motion to substitute counsel. Defendant Rocha claims that he hired a particular attorney, Harold Fried, to represent him at trial, but that Mr. Fried sent an associate at his firm, Steven Sonnenberg, to try the case. Steven Sonnenberg, the associate, represented the accused at all pre-trial proceedings and signed all pre-trial motions. The defendant never voiced an objection or concern about Mr. Sonnenberg's representation before trial or during the first three days of trial. On the fourth day of about a two-week trial, another attorney, Christopher Andreoff appeared in court and stated that the defendant wished to be represented by different counsel. Mr. Andreoff indicated that the defendant had not worked out a retainer arrangement with him. On the sixth day of trial, Mr. Andreoff indicated that, although defendant Rocha had agreed to retain him, he was not prepared to proceed because he lacked sufficient familiarity with the case. The court denied the motion for mistrial.

A defendant has no right to substitute counsel for the purpose of delaying or manipulating his trial. *Meyer v. Sargent*, 854 F.2d 1110, 1113 (8th Cir.1988); *United States v. White*, 529 F.2d 1390, 1393 (8th Cir.1976). An accused may substitute his counsel during trial only for good cause shown such as a conflict of interest, a complete breakdown in communications, or

---

* Rule 403 of the Federal Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

an irreconcilable conflict with his attorney. *Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir.1985). No compelling circumstance justifying substitution of counsel during trial existed in this case. Therefore, the district court properly denied the motion for mistrial.

Furthermore, although it strongly appears that defendant Rocha was not denied effective assistance of counsel, this court declines to consider the claim of ineffective assistance of counsel for the first time on appeal. *United States v. Swidan,* 888 F.2d 1076, 1081 (6th Cir.1989). The defendant may properly raise this issue in a motion to the district court pursuant to 28 U.S.C. § 2255. *United States v. Hill,* 688 F.2d 18, 21–22 (6th Cir.1982), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982).

## IV.

■ Defendant Rocha makes no showing that the government acted improperly in submitting this matter to the grand jury. The basis for defendant Rocha's allegation of impropriety in the grand jury proceedings rests on the trial testimony of U.S. Customs Special Agent David Marwell. Agent Marwell testified that he prepared a report detailing the surveillance of a cocaine transfer. His report indicated that on the night of June 28, 1988, Rocha and another individual transferred boxes of cocaine from a semi tractor-trailer onto a pickup truck. Agent Marwell testified that he did not have personal knowledge of who transferred the cocaine to the truck and that he learned the identities of these individuals from other agents present at the scene. Two co-conspirators' testimony at trial concerning the cocaine transfer was generally consistent with Agent Marwell's except that the co-conspirators indicated that two different individuals had in fact transferred the cocaine to the truck. Defendant Rocha asserts, without any proof, that Rocha's indictment was based on this testimony and therefore that Rocha's indictment resulted from false, perjured or impermissible hearsay evidence. The government vehemently disputes that there was any impropriety in the grand jury proceedings.

■ An indictment, valid on its face, is not subject to challenge on the ground that the grand jury acted on inadequate or incomplete evidence. *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Dismissal of a grand jury indictment is appropriate only where a defendant can establish a long standing pattern of prosecutorial misconduct before a grand jury and actual prejudice. *United States v. Griffith,* 756 F.2d 1244, 1249 (6th Cir.1985), *cert. denied,* 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). As the trial court correctly stated, the defendant's "bare allegations" of government misconduct before the grand jury do not make the necessary showing of prosecutorial misconduct.

## V.

■ Defendant Rocha claims that the government counsel's opening and closing remarks and references to financial transactions during the trial denied him a fair trial. This claim is without merit. In order to deny a defendant a fair trial, prosecutorial misconduct and improper argument must be "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *United States v. Vance,* 871 F.2d 572, 577 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989), quoting *United States v. Mahar,* 801 F.2d 1477, 1503 (6th Cir.1986). Inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact. *United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). In order to decide if the prosecutor's remarks denied the defendant a fair trial, a reviewing court may consider, along with other factors, the potential of the remarks to prejudice the defendant or confuse the jury and the strength of proof against the defendant. *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982); *United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976).

■ Review of relevant portions of the trial transcript indicates that the prosecutor's comments did not deprive defendant of a fair trial. The prosecutor's references to "money laundering" and "drug lords" were not improper given the evidence in this case. Furthermore, the government's isolated comments in closing argument concerning the motivations of its witnesses to be truthful occurred only after the defense argued that the government had charged the defendants solely because the defendants are Colombian, that the government had lied in an effort to obtain an indictment and had presented perjured testimony, and that the prosecutor had the power to reduce witnesses' sentences after obtaining the desired perjured testimony. This court has held that a prosecutor may properly respond to arguments attacking his motivation and credibility. See, e.g., *United States v. Hoffa*, 349 F.2d 20 (6th Cir.1965), aff'd on other grounds, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The prosecutor's remarks taken as a whole do not indicate that he was seeking improperly to influence the jury. Viewed in context, the prosecutor's response to defendants' attacks on his motivations did not deny the defendants a fair trial.

## VI.

■ The sentencing guidelines provide that if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," then the defendant's offense level should be increased by four. U.S. Sentencing Commission, *Guidelines Manual*, § 3B1.1(a) (Oct.1987). According to the commentary to this section, factors which may indicate a leadership role include decision making, recruitment of accomplices, planning and organization. While defendants Castro and Rocha do not dispute that the criminal activity involved five or more persons or was otherwise extensive, the defendants claim that the evidence presented at trial did not establish that they were leaders or organizers of the conspiracy to distribute cocaine.

■ The preponderance of the evidence standard applies to sentencing factors under the guidelines. See *United States v. Silverman*, 889 F.2d 1531 (6th Cir.1989). Testimony at trial indicated that Castro directed other members of the conspiracy to transport cocaine from Miami and elsewhere to various areas of the United States including Detroit, and, on at least one occasion, from Los Angeles to New York. Testimony at trial also indicated that Rocha employed others to travel in cars equipped with secret compartments to transport cocaine from Florida to Detroit and to transport cash proceeds from the sale of drugs from Detroit to Florida. Rocha also directed others to distribute large amounts of cocaine in the Detroit area. The district court did not abuse its discretion by concluding that Castro and Rocha were organizers or leaders of the conspiracy to distribute cocaine.

## VII.

■ The court properly denied both Jaime and Norberto Giraldo sentence reductions for acceptance of responsibility. Defendants Jaime and Norberto Giraldo presented no convincing evidence that the government failed to honor the plea agreements. The plea agreements signed on March 20, 1989, did not provide that either defendant was to receive any reduction in sentence for acceptance of responsibility. Commentary to the relevant section of the sentencing guidelines provides that a guilty plea by itself does not entitle a defendant to a sentence reduction for acceptance of responsibility. U.S. Sentencing Commission, *Guidelines Manual*, § 3E1.1 (Oct. 1987). The Sixth Circuit has held that "when a defendant seeks to establish facts which would lead to a sentence reduction under the guidelines, he shoulders the burden of proving these facts by a preponderance of the evidence." *United States v. Rodriguez*, 896 F.2d 1031 (6th Cir.1990). Because the defendants refused to provide the grand jury testimony required by their plea agreements, the district court's decision not to reduce the Giraldos' sentences on the basis of acceptance of responsibility was not clearly erroneous.

## VIII.

This court must order a limited remand to the district court for the district court to make a finding on the admissibility of co-conspirator statements. Prior to the jury trial in this case, the district court ruled that it would admit co-conspirator statements pursuant to the procedure authorized by *United States v. Enright*, 579 F.2d 980 (6th Cir.1978). See also *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Under *Enright*, the judge may admit the hearsay evidence subject to later demonstration of its admissibility. If the judge proceeds in this fashion, at the end of the trial the trial judge must make a finding on whether the government has demonstrated by a preponderance of the evidence that a conspiracy existed, the defendants against whom the government introduced the statements were participants in the conspiracy, and the statements were made in the course and in furtherance of the conspiracy. *United States v. Curro*, 847 F.2d 325, 329 (6th Cir.1988), *cert. denied*, 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988). In this case, the parties neglected to request and the district court neglected to make such a finding. It is error for the trial court to have failed to make the required *Enright* determination, and therefore this court REMANDS the case for resolution of the limited issue involved and retains jurisdiction over this case pending the district court's finding. *United States v. Mahar*, 801 F.2d 1477, 1503–04 (6th Cir.1986); *United States v. Holloway*, 731 F.2d 378, 381–82 (6th Cir.1984). The court finds that the defendants' other claims of error are without merit.