932 F.2d 969
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James L. BRADEN, Defendant-Appellant.
 No. 90-5485.
 United States Court of Appeals, Sixth Circuit.
 May 8, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, James Lee Braden, appeals from the judgment of conviction resulting from his jury trial, and the district court's application of sentencing guidelines. Defendant was convicted of conspiring to knowingly and intentionally distribute and possess with intent to distribute quantities of cocaine and marijuana, and possessing with the intent to distribute approximately four kilograms of cocaine in violation of 21 U.S.C. Secs. 846 and 841(a).
 
 
 2
 Defendant contends that the government made comments in opening argument based upon evidence not in the record which constituted prosecutorial misconduct and denied him a fair trial. He also claims that the search warrant executed in this case was not based upon probable cause, and that certain evidence utilized by the government was withheld improperly until the eve of trial.
 
 BACKGROUND
 
 3
 In May 1987, coconspirator William Hill traveled to Miami with defendant to pick up a package of marijuana from an individual known only as "Mike." Hill drove back to Kentucky with the marijuana in two Marlboro cigarette boxes taped to the trunk of the car. Defendant returned by air. Upon arriving in Kentucky, Hill drove to defendant's residence where the two placed the marijuana in the basement.
 
 
 4
 In August 1987, Hill and Pat Johnson met defendant and Marilyn Sue Miller in Ft. Lauderdale, Florida, to purchase cocaine. Defendant purchased four kilograms which Hill once again took back to Kentucky via automobile while defendant returned by air. At defendant's residence, the cocaine was packaged for selling, and then transferred to Johnson's residence for distribution. Johnson testified that defendant agreed to pay the rent on her apartment if she would store drugs for him.
 
 
 5
 In October 1987, Hill and Johnson again headed to Florida to purchase cocaine. Defendant met them there and purchased cocaine from Mike. En route to Florida, Johnson and Hill were to deliver cocaine, provided by defendant, to Tim Ashley. However, Ashley never retrieved the cocaine and Hill and Johnson eventually took it with them to Florida. As before, Hill brought the cocaine back to Kentucky by car while defendant returned by air. The drugs were delivered to defendant's home and later moved to Johnson's apartment for distribution by Hill and Johnson.
 
 
 6
 In January 1988, Hill and Lisa Brown traveled to Florida, met defendant there, and purchased cocaine from the same source. Hill also testified that defendant paid the expenses he incurred on all the trips.
 
 ANALYSIS
 
 7
 We first consider whether defendant's cause was prejudiced by the government's opening statement reference to evidence which was the subject of a pending motion in limine. The prosecutor advised the jury that, "I believe that the testimony will show that a search warrant was also executed on the residence of Marilyn Sue Miller and during the course of the execution of that search quantities of cocaine were found." Defense counsel objected on the basis that he had sought to exclude that evidence, and that the court had reserved its ruling on the motion. He sought a mistrial, arguing that the evidence had nothing to do with this case, and that information that defendant's girlfriend had cocaine in her house would inflame the jury against defendant. The government argues that the comment had little effect upon the jury since it was only a brief part of an extensive opening statement, and that any problem was resolved by the judge's admonishment to the jury that opening statements do not constitute evidence.
 
 
 8
 The Supreme Court, in Frazier v. Cupp, 394 U.S. 731, 736 (1969), addressed the kind of concern raised by defendant here:
 
 
 9
 Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given.... At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 84 L.Ed. 1129, 1176, 60 S.Ct. 811 (1940).
 
 
 10
 Under the circumstances of this case, where the court had not yet ruled on the admissibility of the evidence, it properly gave a cautionary instruction to the jury; the court was not required to order a mistrial. The proper approach was to caution the jury and ensure that it retained the ability to judge evidence admitted during the trial. United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). Later, during the trial, and after vigorous arguments by both sides, the trial judge sustained defense counsel's objection to the government's attempt to introduce the evidence. A defendant is not entitled to a new trial in every instance where evidence alluded to in the government's case is ultimately excluded during trial, especially in those instances where the government can make out a credible case for admission of the evidence. See Frazier, 394 U.S. at 736; United States v. Woodring, 446 F.2d 733, 737 (10th Cir.1971); United States v. Arradondo, 483 F.2d 980, 985 (8th Cir.1973), cert. denied, 415 U.S. 924 (1974). In view of the brevity of the statement, the cautionary instruction, and the fact that the government never again mentioned the evidence in the jury's presence, we are unable to say that the government's conduct was persistent, or that the effect of the statement unsupported by later admitted evidence was so manifestly improper and prejudicial as to permeate the entire atmosphere of the trial. United States v. Castro, 908 F.2d at 89.
 
 
 11
 Defendant further argues that the search warrant for his home was not predicated upon probable cause because an anonymous caller provided the information relied upon for the warrant. The information was verified by police officers in an independent investigation. The affidavit executed by Sgt. Pat Hanka of the Louisville Police, in support of the warrant, stated that he relied upon information supplied to him by a confidential informant who had provided reliable information on at least two prior occasions. The caller told Sgt. Hanka that defendant and Hill were partners in the business of dealing drugs and had brought cocaine from Florida to defendant's residence for packaging. In addition, the caller provided the following information concerning defendant: (1) the location of his residence; (2) the type of automobile he drove; and (3) his ownership interest in a grocery store. The caller also stated that defendant had been forced to take over the drug dealing business when Hill had been arrested. Sgt. Hanka corroborated the caller's information by verifying the make of defendant's car, his address, the grocery business, and Hill's recent arrest.
 
 
 12
 The Supreme Court, in United States v. Leon, 468 U.S. 897, 914 (1984), pointed out that "the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." The Court went on to note that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Id. at 915 (citation omitted).
 
 
 13
 Under the Supreme Court's totality of the circumstances test, an "informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report" in showing probable cause for the issuance of the search warrant. Illinois v. Gates, 462 U.S. 213, 230 (1983). These elements are not entirely separate and independent requirements to be rigidly exacted in every case but should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical questions as to whether under the totality of the circumstances there is "probable cause" to believe that contraband or evidence is located in a particular place. Id.
 
 
 14
 Although the caller's information was not detailed, it did contain sufficient indicia of reliability. For instance, the caller knew Hill had recently been charged with drug trafficking, and that defendant was partial owner of a grocery store. In addition, the officer received additional information from other law enforcement personnel and confirmed the information obtained by the caller. Accordingly, the magistrate had substantial bases for concluding that probable cause existed.
 
 
 15
 Defendant's next assignment of error is that evidence which was either lost or not provided to defendant's counsel until the Friday before trial resulted in unfair prejudice. In particular, defendant complains that the delayed disclosure of a fingerprint analysis resulted in a violation of his right to a fair trial. He also contends that the inadvertent destruction of a cigarette box found in his basement denied him possible exculpatory evidence.
 
 
 16
 The fingerprint report which was provided to defendant on the Friday before trial was available for analysis by defense counsel before the first trial and remained available throughout the proceedings. The fingerprint was not defendant's. Defendant did not attempt to explain what effect the fingerprint analysis had upon his case, nor did he ask for a continuance so that he might evaluate the evidence, or argue that the government acted in bad faith.
 
 
 17
 Defendant maintains that the most glaring deprivation of his right to examine and investigate physical evidence was caused by the government's destruction of a Marlboro cigarette box which was supposedly used for transporting marijuana from Florida to Louisville. He notes that the box was destroyed before he was able to examine it to determine if it had come from a cigarette distributor in the Louisville area. Destruction of the box, he contends, deprived him of the opportunity to disprove the government's contention that it was used to transport marijuana from Florida.
 
 
 18
 In Arizona v. Youngblood, 488 U.S. 51 (1988), police failed to preserve semen removed from a boy's rectum. Defendant was charged with sexual assault, and argued that analysis of the semen could have exonerated him. The Supreme Court upheld his conviction, noting that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Id. at 57-58 (citation omitted). The Court distinguished this factual pattern from one where the state fails to disclose to a defendant material exculpatory evidence and held that a due process violation cannot be made out in the absence of a demonstration of bad faith on the part of the police. Defendant was unable to show bad faith. Instead, the testimony indicated that the evidence was accidently mistaken for garbage and thrown away.
 
 
 19
 Defendant next complains that both a tape-recording of defendant conversing with Johnson, and a photograph of money found in his house, should not have been admitted since the prejudicial effect of their admission far outweighed their probative value. The issue concerning the tape-recording was not raised in the district court in defendant's motion for a new trial. Unless exceptional circumstances are present, this court will not address an issue raised for the first time on appeal. White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990). We have not been made aware of any exceptional circumstances.
 
 
 20
 Defendant also challenges the admission of a photograph depicting bundles of money secured by rubber bands in a specific pattern. A law enforcement officer testified that the photograph was discovered while executing the search warrant on defendant's residence, and the government sought to introduce it to corroborate testimony from several witnesses that money they received from defendant during drug transactions was bundled in the same manner. Defendant claims that the photograph was irrelevant because he stipulated to the manner in which he bundles money; he also contends that the admission of the photograph was highly prejudicial. Any prejudice that might have resulted, however, was cured by the court's admonition to the jury:
 
 
 21
 Members of the jury, there was an Exhibit 17 admitted yesterday. There is no testimony as to whether this photograph is ten years old or two days old, the age of the photograph has not been established. There is nothing in the record to establish that these funds, or this currency had anything to do with this case on trial here today.
 
 
 22
 Defendant also argues that his sentence was improperly adjusted upward based upon Section 3B1.1(a) of the Sentencing Guidelines, which provides for a four-level increase if a defendant organizes or leads a criminal activity involving five or more participants. U.S.S.G. Sec. 3B1.1(a). The court found that there were at least five participants in the conspiracy: (1) Hill; (2) Johnson; (3) "Mike"; (4) Miller; and (5) Ashley. Defendant avers that Ashley was only a customer and, therefore, should not be included, and that both Johnson and Miller, the coconspirators' girlfriends, should not be included.
 
 
 23
 The district court's determination with regard to a defendant's role in the offense is subject to the clearly erroneous standard of review. United States v. Silverman, 889 F.2d 1531, 1540 (6th Cir.1989). Defendant's argument that these additional individuals were not sufficiently involved as to be included under section 3B1.1(a) is not well-taken. All five participants were aware of the drug transactions; all assisted in some manner, whether it was actually selling, possessing, storing, or using--they all had a role in the drug violations. Accordingly, the court's finding was not clearly erroneous.
 
 
 24
 Defendant also challenges the court's finding regarding the cocaine's purity level. The court stated that "the wrappers in which the cocaine was found was typical of those wrappers used to ship cocaine from Columbia and ... Columbian cocaine is of high quality when it comes in those types of wrappers." While the district court's finding is not grounded upon the most convincing evidence, it cannot be said that it is clearly erroneous.
 
 
 25
 Finally, defendant claims that the cumulative effect of the various trial errors amounted to prejudicial error. This court has stated that "errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair. Walker v. Engle, 703 F.2d 959, 963 (6th Cir.), cert. denied sub nom. Marshall v. Walker, 464 U.S. 951 (1983). However, we are not convinced that issues raised by defendant regarding each purported error were so close that their cumulative effect was to deny him a fair trial. Therefore, defendant has not made out a due process violation.
 
 
 26
 The judgment of conviction and sentence of the district court is affirmed.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge from the Eastern District of Michigan, sitting by designation