21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America Petitioner-Appellee,
v.
Kemonti McDOWELL Respondent-Appellant.
 No. 93-5466.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1994.
 
 Before: GUY and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Kemonti McDowell appeals his conviction for possession with intent to distribute crack cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B). The jury was selected on February 1, 1993. The entire trial including jury instructions took place on February 2, 1993. The jury returned its verdicts on February 3, 1993. On March 30, 1993, McDowell received a custodial sentence of 189 months plus four years' supervised release.
 
 
 2
 McDowell raises the following issues on appeal:
 
 
 3
 1) Whether the government attorney's misstatement of the presumption of innocence during jury voir dire was plain error.
 
 
 4
 2) Whether other alleged prosecutorial misconduct, considered along with the improper definition of the presumption of innocence, deprived the appellant of a fair trial.
 
 
 5
 3) Whether the court erred in denying his motion for a mistrial.
 
 I. BACKGROUND
 
 6
 McDowell was arrested during the execution of a search warrant at 4118-B Fagan Street in Chattanooga, Tennessee, on October 10, 1991. As the officers entered, they saw one occupant conducting a sale of crack cocaine. The seller, LaFonda Witcher, began swallowing the crack cocaine. A few feet away, the police observed defendant McDowell seated on a couch. After McDowell was ordered to stand up, a bag of crack cocaine was found on the couch. McDowell said that it was not his. Two additional bags of crack cocaine were also found in McDowell's pockets. Upon finding the two bags, the officer remarked, "I guess that these aren't yours either." McDowell did not comment.
 
 II. DISCUSSION
 A. The Presumption of Innocence
 
 7
 During the jury voir dire, the government's attorney explained the presumption of innocence as follows:
 
 
 8
 In any criminal case, this one included, of course, the Defendant starts off with what we call a presumption of innocence, okay? That, of course, doesn't mean he is innocent. It's a starting point that we in our criminal justice system start every trial with, okay?
 
 
 9
 It means, of course, that if the United States didn't put on any proof at all, of course, we'd have to acquit the defendant. On the other hand, if the United States and when the United States does begin to put on evidence and proof to establish the elements of the offense, it washes away this presumption. Okay?
 
 
 10
 (emphasis added).
 
 
 11
 McDowell did not object and the court did not intervene.
 
 
 12
 In its instructions to the jury at the conclusion of the trial, the court explained the presumption of innocence as follows:
 
 
 13
 As you know, the Defendant has pleaded not guilty to the crime charged in the indictment. The indictment is not any evidence at all of guilt. It's just the formal way that the Government tells the Defendant what crimes he is accused of committing. It does not even raise any suspicion of guilt. Instead, the Defendant starts the trial with a clean slate with no evidence at all against him and the law presumes that he is innocent.
 
 
 14
 This presumption of innocence stays with him unless the Government presents evidence here in court that overcomes the presumption and convinces you beyond a reasonable doubt that he is guilty. This means that the Defendant has no obligation to present any evidence at all or prove to you in any way that he is innocent. It's up to the Government to prove that he's guilty, and this burden stays on the Government from start to finish.[1]
 
 
 15
 The government argues in its appellate brief that the prosecutor's definition was accurate by quoting the court's instruction. This argument is disingenuous and unworthy because the government pointedly omits the sentence that the presumption of innocence stays with the defendant unless the government presents evidence that overcomes the presumption and convinces the jury beyond a reasonable doubt that the defendant is guilty.
 
 
 16
 The presumption of innocence is fundamental to a fair trial. It would have been appropriate for the court to have intervened without objection. The issue we must decide is whether the omission to intervene sua sponte was plain error.
 
 
 17
 " 'Plain errors are limited to those harmful ones that are so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial.' " United States v. Goodlett, 3 F.3d 976, 978 (6th Cir.1993) ( quoting United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988)). When errors are reviewed for plain error, reversal is only "appropriate in exceptional circumstances, where a miscarriage of justice would result." Id.
 
 
 18
 In United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976), this Court established the following guidelines to determine whether prosecutorial misconduct prevented defendants from receiving a fair trial:
 
 
 19
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 20
 In United States v. Driscoll, 970 F.2d 1472 (6th Cir.1992), cert. denied, 122 L.Ed.2d 362 (1993), the Court was concerned with unobjected-to statements made by the prosecutor. There we stated that " 'inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact.' " Id. at 1485, citing United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990).
 
 
 21
 "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." Delo v. Lashley, 122 L.Ed.2d 620, 631 (1993), ( quoting Estelle v. Williams, 425 U.S. 501, 503 (1976). The fact that the evidence of McDowell's guilt was very substantial would not save the conviction if there was reason to believe that the jury was misled concerning the nature of the presumption. For the following reasons, however, we do not believe that the government's misstatement of law misled the jury.
 
 
 22
 First, during voir dire, the defense attorney attempted to correct the prosecutor's misstatement as follows:
 
 
 23
 Mr. Cook made the statement that the accused is cloaked in the presumption of innocence until overcome by the state's [sic] evidence. I'd like to correct one thing and make sure it's clear with you. The fact that the state or Government puts on proof doesn't necessarily overwhelm the presumption of innocence.
 
 
 24
 You have to feel that that proof establishes the elements of the crime and that no other evidence presented rebuts that evidence. Now, does anyone have a problem with that concept of viewing the evidence in this case? If they do, please indicate by raising their hand. Thank you.
 
 
 25
 Second, the court instructed the jury that the arguments and statements of counsel were not evidence and that the court's instructions regarding the law were to be followed, not counsel's interpretation.
 
 
 26
 Third, it was a short trial. Jury instructions containing a correct statement of law were given the day after the jury was selected.
 
 
 27
 Additionally, while not controlling, it does not appear that the prosecutor's misstatement was designed to deliberately mislead the jury.
 
 
 28
 We conclude that the court's failure to correct the prosecutor's misstatement of law was not plain error.
 
 B. Other Alleged Prosecutorial Misconduct
 
 29
 Except as otherwise noted, the defendant did not object to any of the following incidents.
 
 
 30
 (1)
 
 
 31
 During voir dire, the prosecutor made the following comment:
 
 
 32
 As jurors, those of you who are chosen to serve as jurors, you will represent the entire community. That is all of southeast Tennessee, and, in fact, you'll be representing all of the United States as jurors. In doing so, we ask you to see that our laws are enforced fairly and equally, and to set aside any passions, any prejudices and any sympathies and decide this case on the law and the facts that are presented to you in this case.
 
 
 33
 McDowell argues that this statement somehow imposes on the jurors some greater responsibility than to be the trier of fact. He does not elaborate.
 
 
 34
 This appears to be an accurate statement of the law.
 
 
 35
 (2)
 
 
 36
 McDowell claims that the government attorney impermissibly emphasized McDowell's prior convictions during closing arguments. He additionally argues that the government made an improper appeal to the juror's concern about drug trafficking. McDowell also claims that the government's attorney improperly vouched for his witness.
 
 
 37
 The portion of the closing statement in question was as follows:
 
 
 38
 The defendant in previous sworn testimony has called these officers liars. And I am particularly disturbed about that in this case, because Kemonti McDowell, and if you want to, please, I would encourage you to look through his prior convictions, has twelve prior felony convictions.
 
 
 39
 Okay. These officers go out here on a daily basis and they risk their lives for us going in these crack houses to deal with people like Kemonti McDowell. He has the gall to come in here and tell you they're liars, okay? He's just been out of the penitentiary after twelve felony convictions and he's going to come in here and tell us that they're liars. Liars.
 
 
 40
 First, regarding the prior convictions, McDowell elected to testify during trial and claimed that he never possessed the drugs. Because his credibility was in issue (he also claimed he had been convicted only once), the government introduced evidence of McDowell's prior convictions. McDowell also stated during his testimony that one of the testifying officers was a "liar."
 
 
 41
 The context of the statements quoted above reveals that the government was visiting the issue of credibility that had been raised at trial. The reference to the prior convictions was not misconduct.
 
 
 42
 Second, appeals to the community's sense of dangers of drug trafficking are not improper. McDowell does not elaborate as to how this was prejudicial. It is not improper to appeal to law and order. The context of the statements does not indicate that they would likely tend to inflame the jury.
 
 
 43
 Third, as to improper vouching, the record does not disclose that the prosecutor offered his personal opinion as to the government's witnesses' trustworthiness.
 
 
 44
 There was an instance where the prosecutor stated, "I stand on my oath. That's not--my job is not to lead you down some path." However, this statement was in response to defense counsel's argument that the government attorney was attempting to lead the jury down some path; it was not an effort to personally vouch for a witness. A prosecutor may properly respond to defense arguments which attack his motivation and credibility. United States v. Castro, 908 F.2d 85 (6th Cir.1990).
 
 
 45
 There was also an instance where the prosecutor responded to an argument that a police officer had fabricated his story. The defense suggested this was so because the officer had to review his notes during trial. The prosecutor stated that the officer was a professional trying to do his job and nothing could be insinuated from his refreshing his recollection during trial.
 
 
 46
 (3)
 
 
 47
 During rebuttal argument the following statement and colloquy occurred.
 
 
 48
 MR. COOK: Thank you, Your Honor. Ladies and gentlemen, I just want to--Mr. Tidwell began by telling you that this was an extremely important day for Kemonti McDowell. Well, this is a very important day for the United States, too, because Mr. McDowell has committed one of the most serious crimes facing our nation.
 
 
 49
 Mr. Tidwell is surely right when he says to you that there are plenty of good people who live in this area, because there are. They should not have to tolerate the likes of Kemonti McDowell overrunning their community. There are people held hostage down in that area. Old people, old people, young people, kids who can't live in their own homes.
 
 
 50
 MR. TIDWELL: I'm going to object to this as being outside the record.
 
 
 51
 THE COURT: Yeah, it's outside the record. Sustained.
 
 
 52
 In all of the incidents outlined in (1), (2), and (3) above, we find no prosecutorial misconduct and certainly nothing that even arguably constitutes plain error.
 
 
 53
 (4)
 
 
 54
 McDowell argues that the prosecutor compounded the alleged misconduct by eliciting impermissible comment from the arresting officer regarding McDowell's failure to deny the drugs were his after they were found. He cites Doyle v. Ohio, 426 U.S. 610 (1976).
 
 
 55
 A "Doyle situation" may occur at trial after an accused offers an explanation as to certain events or actions taken. The violation occurs when an officer comments on the accused's silence or failure to offer an explanation at the scene after a Miranda warning has been given. It is inherently unfair to tell a suspect that he has a right to remain silent and then use the silence to impeach an explanation that he offers at trial.
 
 
 56
 There was no Doyle violation here because McDowell was not told that he had the right to remain silent when the officer discovered the crack cocaine in his pocket and then commented that he supposed that the crack cocaine was not his. Additionally, the testimony regarding McDowell's silence was not used to impeach an explanation for why the crack cocaine was in his pocket and under his leg.
 
 C. Failure to grant mistrial
 
 57
 Towards the end of McDowell's defense presentation, he called a former police officer to testify that the house where the arrests occurred was a well-known crack house and that Everett and Darrell Hicks were well-known crack dealers who ran the house. The purpose of the testimony apparently was to establish that the Hicks brothers were running a crack house, not defendant McDowell.
 
 
 58
 On cross-examination, the prosecutor asked one question: "Who supplied the Hicks brothers with crack?" No objection was made. The former officer answered, "Kemonti McDowell."
 
 
 59
 On redirect, it was established that the former officer's answers regarding the Hicks brothers and McDowell were based on information received from informants. McDowell asked for a sidebar and then asked for a mistrial. The court denied the motion for mistrial and immediately instructed the jury not to consider the evidence regarding the Hicks brothers or their supplier. The court also, at McDowell's request, informed the jury that the testimony should not be considered because it was unreliable.
 
 
 60
 There was no error in denying the motion for mistrial. First, thorough curative instructions were given immediately following the discovery that the evidence was inadmissible. Second, McDowell opened the door to adverse testimony by attempting to establish that the Hicks brothers had reputations as drug dealers. The government cites several cases where courts have held that the introduction of inadmissible or irrelevant evidence by one party justifies admission of otherwise inadmissible evidence to rebut a false impression that might have resulted from earlier admission. See, United States v. Brown, 921 F.2d 1304 (D.C.Cir.1990); United States v. Rea, 958 F.2d 1206 (2d Cir.1992); United States v. Whitworth, 856 F.2d 1268 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989); and United States v. Segal, 852 F.2d 1152 (9th Cir.1988). Finally, McDowell did not object until after the redirect and recross.
 
 
 61
 The court properly denied the motion for mistrial.
 
 CONCLUSION
 
 62
 McDowell had a fair trial. His conviction is affirmed.
 
 
 
 *
 Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The court's instruction mirrors Sec. 1.03 of the Sixth Circuit Pattern Criminal Jury Instructions (1991)