57 F.3d 1071
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Isaac OGUGUO, Defendant-Appellant.
 No. 94-1578.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1995.
 
 Before KENNEDY and JONES, Circuit Judges; and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 A jury convicted defendant, Isaac Oguguo, on five counts of credit card fraud, in violation of 18 U.S.C. Sec. 1029(a)(2). Defendant now appeals, attacking the indictment, the sufficiency of the evidence, testimony regarding handwriting exemplars, and the photographic arrays. We affirm.
 
 I.
 
 2
 This case began on October 22, 1990, when defendant attempted to make a purchase at a Mobil gas station with a credit card issued in the name of Joseph Woods. The cashier ran the card through an authorization machine and spoke with defendant while she waited for approval of the transaction. The authorization check, however, instructed the cashier to "pick up." Following the instructions, she placed a telephone call to obtain approval. Defendant indicated he wanted to leave and paid for the purchase in cash. The cashier informed him that she was required to keep the card until the authorization company told her what happened.
 
 
 3
 After defendant left the station, the authorization company asked the cashier to detain him until the entire matter was cleared up. The cashier was unable to comply, but she did provide the company with a description of defendant and the car he was driving. The cashier also informed her manager of the incident. The manager instructed the cashier to keep the Woods credit card.
 
 
 4
 Defendant returned to the station later in the day and made another purchase. At this time, another cashier had replaced the original one, but the original cashier was still in the store. She saw defendant in line and informed her manager. She also conversed briefly with defendant, who asked about the card. The manager called the police, who arrived just as defendant was pulling away. Because the officer who responded was in an unmarked car, he radioed for a marked car to stop defendant. After the police stopped defendant and arrested him, they searched his car and found a briefcase. The briefcase contained two credit card applications ready to be mailed, notebooks containing approximately six blank applications for credit cards, and a Chemical Bank credit card bill. The officers then returned to the gas station and picked up the Woods credit card.
 
 
 5
 The Southfield Police referred the case to the United States Secret Service, which began an investigation. Agent Harris gained custody of the briefcase and reviewed its contents further. The two completed credit card applications were in the names of Robert Link and Michael Kusnick. The briefcase also contained bills sent to Michael Kusnick at a Mail Boxes, Etc. address, two blank student identification cards from Wayne State University that contained registrar's stamps, and two lists of social security numbers. When examining the notebook, Agent Harris found hand-written notes setting forth the personal histories of various individuals who had credit cards issued to the same Mail Boxes, Etc. address as the Kusnick bills.
 
 
 6
 Agent Harris then obtained a search warrant for the Mail Boxes, Etc. address--4217 Highland Road # 136. The mailbox contained letters concerning credit cards and credit card bills addressed to Glen White, Richard Zimmer, Robert Link, Michael Kusnick, Michael Vanderbeek, and others. A clerk at the store identified defendant from a photo array and informed the agents that defendant had used the name Oakley Kirkland when renting the box.
 
 
 7
 On July 15, 1993, a grand jury issued a five-count indictment charging defendant with credit card fraud. The charges pertained to credit cards issued in the names of Joseph Woods, Robert Reynolds, Michael Kusnick, Michael Vanderbeek, and Brian Stuart. On November 17, 1993, the grand jury returned a five-count superseding indictment, which corrected one of the credit card numbers. After a two day trial, a jury convicted defendant on all five charges. Defendant now appeals.
 
 II.
 A. Indictment
 
 8
 Defendant contends that count I, relating to the Woods card, should be dismissed because that portion of the indictment was obtained on the basis of perjured testimony. Secret Service Agent Rebecca Lacovic testified before the grand jury and, as the government concedes, erroneously stated that the Woods card was in defendant's possession at the time of his arrest. Defendant contends the testimony is crucial, as no other evidence connected defendant to that card. The Woods card had not been sent to the same Mail Boxes, Etc. as the other cards.
 
 
 9
 After filing his notice of appeal, defendant filed a motion with the District Court seeking an evidentiary hearing on this issue. The lower court did not hold a hearing, but did issue an opinion denying defendant's motion on the merits. Some question exists as to whether the District Court had jurisdiction to enter that order during the pendency of this appeal. Regardless of the answer to that question, however, our jurisdiction is not in doubt, and our disposition of this issue would be the same with or without the District Court's opinion. Accordingly, we will disregard the supplemental proceedings in the lower court when resolving this question.
 
 
 10
 The grand jury has substantial leeway and, under ordinary circumstances, we will not peer behind the surface of a facially valid indictment. United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990). We make an exception, however, in cases of prosecutorial misconduct. We set forth the standards governing these situations in United States v. Adamo, 742 F.2d 927 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985). In that case, we declared that
 
 
 11
 a federal prosecutor faced with a situation [where tainted evidence was presented to a grand jury] must personally weigh the untainted evidence supporting the government's case and decide if the evidence is such that a jury of twelve is likely to unanimously find that the evidence establishes guilt beyond a reasonable doubt.
 
 
 12
 ...
 
 
 13
 .. [T]he power to exercise supervisory control over the prosecutor to protect the integrity of the judicial system remains. This power includes the authority to dismiss an indictment when appropriate. However, such supervisory power should be exercised ... sparingly, "and only on a showing of demonstrated and longstanding prosecutorial misconduct."
 
 
 14
 Id. at 941-42 (quoting United States v. Nembhard, 676 F.2d 193, 199 (6th Cir.1982)).
 
 
 15
 This is clearly not a case that calls for us to exercise our supervisory power. There is no question that Agent Lacovic's testimony before the grand jury erroneously stated that defendant was in possession of the Woods credit card at the time of his arrest. Defendant, however, has not presented any evidence to show that this one incident is part of a pattern of "longstanding prosecutorial misconduct," and the false testimony was not repeated before the jury at trial. The government had sufficient evidence, primarily from the gas station cashier, to connect defendant to the Woods credit card.
 
 
 16
 Defendant argues that the record contains no indication that the prosecutor followed the weighing procedure outlined in Adamo, as the prosecutor did not present any testimony or an affidavit to the District Court. Defendant also maintains that the District Court should have conducted a review of the grand jury transcript relating to the superseding indictment with respect to this matter. Neither of these actions is required when the remaining evidence of defendant's use of the credit card is so overwhelmingly against defendant, while the false evidence that he retained possession of the credit card adds little or nothing to the use. Accordingly, the District Court did not err in refusing to dismiss the indictment.
 
 B. Sufficiency of the Evidence
 
 17
 Defendant contends that the government presented insufficient evidence to link him to the cards named in counts II, III and V. Defendant also argues that the government did not present sufficient evidence to show that he obtained property aggregating $1000 in value during a one year period, as is required by the statute. In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 18
 Count II accused defendant of using a credit card issued under the name of Robert Reynolds. Count III related to a card in the name of Michael Kusnick, and Count V related to a card issued to Brian Stuart. The gist of defendant's argument is that the government did not present the testimony of anyone who identified defendant as the person using any of these cards. Rather, the evidence showed only that those cards were sent to the Mail Boxes, Etc. address used by defendant. Defendant's argument fails. The government is not required to present direct evidence to support a conviction. The circumstantial evidence presented was clearly sufficient. The government showed a pattern by defendant of obtaining credit cards through false names and a Mail Boxes, Etc. address. The government connected all three of the contested cards to this address. In addition, defendant had a completed credit card application in the name of Michael Kusnick and a bill sent to that same name in his possession at the time of his arrest.
 
 
 19
 Defendant's argument with respect to the value also rests on his mistaken impression that direct evidence is required. The government showed that the Woods card, which was issued in July 1990, had a balance of over $5000 at the time it was cancelled in October 1990. The Reynolds card amassed $7700 in charges over a four month span; the Kusnick card was used to purchase $1900 worth of items in two months; the Vanderbeek card was used to charge $5100 in six months, and the Stuart card was used to make $4000 worth of charges in six months. This is sufficient evidence on each of the five counts.
 
 C. Handwriting Exemplars
 
 20
 Defendant also contends that the government elicited prejudicial testimony when Agent Harris testified that defendant refused to supply the fifteen exemplars needed to perform an analysis. According to defendant, this created a prejudicial inference against him. Defendant concedes that he did not object to this testimony at trial and that we therefore can review only for plain error.
 
 
 21
 The government did not elicit any testimony on the subject of handwriting exemplars during direct examination of Agent Harris. On cross-examination, however, defense counsel asked a number of questions regarding Harris' failure to obtain handwriting analysis. In one of those questions, defense counsel asked "So you took handwriting exemplars and chose not to have them compared, is that correct?" Agent Harris answered "That is correct." On redirect, the government sought to flesh out this answer and elicited testimony that defendant had provided only one sample and refused to provide any more. Harris testified that he needed fifteen exemplars to obtain a "sound opinion," so he chose not to submit the one he had been able to obtain.
 
 
 22
 There is no error here. Handwriting exemplars are not protected by the Fifth Amendment. United States v. Jacobowitz, 877 F.2d 162, 169 (2d Cir.), cert. denied, 493 U.S. 866 (1989). The government was simply following-up on a line of questioning initiated by defense counsel. It was entitled to do so.
 
 D. Photographic Array
 
 23
 Finally, defendant has raised a question regarding the propriety of the photographic arrays used during the investigation. Pretrial photographic arrays violate the due process clause only if they are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Such a likelihood arises if defendant's picture is the only one that matched the witness' description or if defendant's picture stood out from the others in some other impermissible respect. Jacobowitz, 877 F.2d at 167-68. We have reviewed the arrays used in the present case and find no constitutional problems with them.
 
 III.
 
 24
 For the foregoing reasons, we AFFIRM defendant's conviction.
 
 
 
 *
 The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation